**William T. WADE, Appellant,**

**v.**

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

No. 97–1184.

United States Court of Veterans Appeals.

July 23, 1998.

William T. Wade, pro se.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; Joan E. Moriarty, Deputy Assistant General Counsel; and Monique A.S. Allen, were on pleadings, for appellee.

Before FARLEY, IVERS, and GREENE, Judges.

FARLEY, Judge:

The appellant, William T. Wade, appeals a March 19, 1997, decision of the Board of Veterans' Appeals (Board or BVA) which found that he had failed to submit well-grounded claims for service connection for bilateral hearing loss and tinnitus. The appellant submitted an informal brief, and the Secretary filed a motion for summary affirmance in lieu of a brief. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will grant the Secretary's motion in part and affirm the decision of the Board.

## I.

The veteran served on active duty in the U.S. Army from October 1940 to August 1945. Record (R.) at 10. His service medical records (SMRs) are not available and are presumed destroyed in a 1973 fire at the National Personnel Records Center. R. at 35. He alleges that in 1943, while serving on an Australian freighter, his ship was bombed and the bomb exploded approximately six feet away from him. R. at 13. He claims that since that time he has had trouble hearing and a ringing in his ears. *Id.*

The veteran filed a claim for service connection for, inter alia, hearing loss and ringing in his ears in May 1993. R. at 13–16.

He reported that he has been treated by two private physicians for hearing loss since 1987. R. at 14. An August 1993 VA audiological examination confirmed that the veteran currently suffers from bilateral sensorineural hearing loss, but found no evidence of tinnitus. R. at 40–43. The earliest medical evidence of hearing loss was from 1986 or 1987. *See* R. at 31, 47. None of the medical evidence of record relates the veteran's current hearing loss to his military service. On October 5, 1993, the regional office (RO) denied the veteran's claim for service connection for hearing loss because hearing loss was not shown until many years after service and his claim for service connection for tinnitus as not shown by the evidence. R. at 47–48. The veteran then submitted additional private medical records from 1988 (R. at 52), and the RO confirmed its denial of service connection in January 1994 (R. at 55). The veteran filed a Notice of Disagreement in March 1994. R. at 60.

The veteran testified at a personal hearing before the RO in June 1994 and reiterated his contention that his hearing loss was caused by the sound of a bomb exploding near him in service in 1943. R. at 73–77. He also reported that he had first sought treatment for his hearing loss sometime in the late 1960's or early 1970's, but that his doctor had since passed away and his medical records would not be available. R. at 77. A friend of the veteran, Mr. J.W. Cofer, also testified at the hearing. R. at 78–79. Mr. Cofer stated that he did not notice that the veteran had any hearing problem before service, but that after service "[i]t was common knowledge" that the veteran had problems with his ears. *Id.* The hearing officer issued his decision denying the veteran's claim for service connection for hearing loss and tinnitus on June 16, 1994. R. at 92–93.

In the March 19, 1997, decision here on appeal the Board found that there was no medical evidence showing a nexus between the veteran's current conditions and service. R. at 3. The Board therefore concluded that the veteran's claims for service connection for hearing loss and tinnitus were not well grounded. *Id.* This appeal followed.

## II.

■ Section 5107(a) of title 38, U.S. Code, provides in pertinent part: "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." The determination of whether a claim is well grounded is a matter of law which this Court reviews de novo. *Grivois v. Brown*, 6 Vet. App. 136, 139 (1994). The Court has held that a well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [§ 5107(a) ]." *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). "The quality and quantity of the evidence required to meet this statutory burden of necessity will depend upon the issue presented by the claim." *Grottveit v. Brown*, 5 Vet.App. 91, 92–93 (1993). Where the determinative issue involves medical causation or a medical diagnosis, competent medical evidence to the effect that the claim is "plausible" is generally required. *Id.* at 93. In *Caluza v. Brown*, the Court held that for such a claim to be well grounded, there generally must be (1) a medical diagnosis of a current disability; (2) medical or, in certain circumstances, lay evidence of incurrence or aggravation of a disease or injury in service; and (3) medical evidence of a nexus between an in-service injury or disease and the current disability. 7 Vet.App. 498, 506 (1995), *aff'd,* 78 F.3d 604 (Fed.Cir.1996) (table); *see also Epps v. Brown*, 9 Vet.App. 341 (1996), *aff'd sub nom. Epps v. Gober*, 126 F.3d 1464 (Fed.Cir.1997).

■ Although evidence of service incurrence is usually shown by service medical records, in certain circumstances veterans who have engaged in combat may use "lay or other evidence" to establish service incurrence of a disease. *Caluza*, 7 Vet.App. at 505, 507; 38 U.S.C. § 1154(b). Section 1154(b) of title 38, U.S. Code provides:

In the case of any veteran who engaged in combat with the enemy in active service with a military, naval, or air organization of the United States during a period of war, campaign, or expedition, the Secretary shall accept as sufficient proof of service[ ]connection of any disease or injury alleged to have been incurred in or aggravated by such service satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service, and, to that end, shall resolve every reasonable doubt in favor of the veteran. Service[ ]connection of such injury or disease may be rebutted by clear and convincing evidence to the contrary. The reasons for granting or denying service[ ]connection in each case shall be recorded in full.

38 U.S.C. § 1154(b); *see also* 38 C.F.R. § 3.304(d) (1997). "Section 1154(b) does not create a statutory presumption that a combat veteran's alleged disease or injury is service[ ]connected[;] ... [it] does, however, considerably lighten the burden of a veteran who seeks benefits for an allegedly service-connected disease or injury and who alleges that the disease or injury was incurred in, or aggravated by, combat service." *Collette v. Brown*, 82 F.3d 389, 392 (Fed.Cir.1996).

■ In *Caluza*, the Court held that when a claimant submits "satisfactory lay or other evidence of service incurrence" (38 U.S.C. § 1154(b)), "section 1154(b)'s relaxation of adjudication evidentiary requirements dictates that the veteran's 'lay or other evidence' be accepted as sufficient proof of *service incurrence or aggravation.*" 7 Vet.App. at 508 (emphasis added). In April 1996, one year after this Court's decision in *Caluza*, the U.S. Court of Appeals for the Federal Circuit issued its decision in *Collette*, noting that "[a]s both parties recognize, § 1154(b) sets forth a three-step, sequential analysis that must be undertaken when a combat veteran seeks benefits under the method of proof provided by the statute." 82 F.3d at 392–93. The Court then described those requirements as follows:

As the first step, it must be determined whether the veteran has proffered "satisfactory lay or other evidence of service incurrence or aggravation of such injury

or disease." 38 U.S.C. § 1154(b). As the second step, it must be determined whether the proffered evidence is "consistent with the circumstances, conditions, or hardships of such service." *Id.* The statute provides that if these two inquiries are met, the Secretary "shall accept" the veteran's evidence as "sufficient proof of service-connection," even if no official record of such incurrence exists. *Thus, if a veteran satisfies both of these inquiries mandated by the statute, a factual presumption arises that the alleged injury or disease is service[ ]connected.*

. . . .[A]s the third step of the analysis, it must be determined whether … service[ ]connection [has been rebutted] by "clear and convincing evidence to the contrary."

*Collette,* 82 F.3d at 393 (emphasis added). Subsequently, this Court, in *Libertine v. Brown,* concluded as follows regarding *Collette:*

It is unclear whether in setting forth this analysis the Federal Circuit intended to alter the medical nexus requirement set forth in *Caluza* … (holding that section 1154(b) relates only to what happened in service ("what happened then") and does not excuse need for medical evidence of nexus to service, and that term "service connection" in that statute means "service incurrence or aggravation.") The Federal Circuit's silence regarding this issue, in the face of its positive affirmation of *Caluza* with respect to the meaning of "satisfactory" evidence … and its holding, as *Caluza* had suggested, 7 Vet.App. at 510–12, that the weighing of contrary evidence cannot be considered under § 1154(b) as part of the first two steps but only as part of rebuttal of service incurrence under the clear-and-convincing evidence standard, can be fairly read as not affecting *Caluza 's* medical nexus analysis, a reading that the Court adopts.

*Libertine,* 9 Vet.App. 521, 524 (1996), *appeal dismissed for lack of jurisdiction,* 132 F.3d 50 (1997) (table). As this Court has recently stated in *Velez v. West:*

This *Libertine/Caluza* interpretation of section 1154(b) and the Federal Circuit's

opinion in *Collette* has become deeply embedded in this Court's caselaw. *E.g., Turpen v. Gober,* 10 Vet.App. 536, 539 (1997) (holding that, absent medical-nexus evidence, there was "no reasonable possibility that consideration of § 1154(b) by the Board could change the outcome of the case on the merits"); *Brock [v. Brown,* 10 Vet.App. 155, 162 (1997) ] ("reduced evidentiary burden provided for combat veterans by 38 U.S.C. § 1154(b) relate[s] only to the question of service *incurrence,* 'that is, what happened then—not the questions of either current disability or nexus to service, as to both of which competent medical evidence is generally required' " (quoting *Caluza,* 7 Vet.App. at 507)); *Cohen (Douglas) v. Brown,* 10 Vet.App. 128, 138 (1997) ("[s]ection 1154(b) provides a factual basis upon which a determination can be made that a particular disease or injury was incurred or aggravated in service but not a basis to link etiologically the condition in service to the current condition").

11 Vet.App. 148, 154 (1998).

Two months after the Court issued its decision in *Velez,* the Federal Circuit, in *Caesar v. West,* No. 97–7069, 1998 U.S.App. LEXIS 9755 (May 14, 1998), albeit a nonprecedential opinion, declined the opportunity to reject our interpretation of § 1154(b). The Court has addressed the nexus issue in *Caluza, Libertine,* and *Velez,* and has consistently held, as we hold again today, that a combat veteran who has successfully established the in-service occurrence or aggravation of an injury pursuant to § 1154(b) and *Collette,* must still submit sufficient evidence of a causal nexus between that in-service event and his or her current disability as required by *Caluza.* This is necessary for a claimant both to meet his or her initial burden of submitting a well-grounded claim, and, of course, to be ultimately successful on the merits of the claim.

### III.

The appellant alleges that his ear injury occurred while serving on a ship that was bombed by the Japanese. Neither the RO nor the BVA determined whether the

appellant "engaged in combat with the enemy," nor did they discuss the applicability of § 1154(b). If § 1154(b) is applicable to the veteran's claim, a determination which cannot be made by this Court in the first instance, the appellant's evidentiary burden would be "considerably light[ened]." *Collette, supra* (remanding for the Board to determine the applicability of § 1154(b)). It is clear that the veteran currently suffers from bilateral hearing loss and, for the purposes of this decision, we will assume that the veteran also suffers from tinnitus. R. at 40–43; *see also* R. at 5–6 (BVA decision describing medical evidence of hearing loss and lay evidence of tinnitus, apparently assuming the current presence of tinnitus). Therefore, the first element of a well-grounded claim has been satisfied. *See Caluza, supra.* The only evidence of an in-service event that may be related to the veteran's condition is his own lay testimony. If § 1154(b) is applicable to the appellant's claim, the lay evidence presented may be sufficient to establish an in-service injury, the second requirement of *Caluza, supra.* Even assuming that § 1154(b) was applicable to the appellant's claim, and that under § 1154(b) the appellant has submitted sufficient evidence of both the first and second requirements of a well-grounded claim, because § 1154(b) *does not* obviate the third requirement, the appellant is still required to submit medical evidence of a causal relationship between his current conditions and his military service. *See id.* The record contains no such evidence. Accordingly, the appellant's claims for service connection for hearing loss and tinnitus are not well grounded. The Board's error in not addressing § 1154(b), therefore, was not prejudicial to the appellant. *See* 38 U.S.C. § 7261(b) ("Court shall take due account of the rule of prejudicial error"); *Velez, supra* (BVA's error in applying § 1154(b) was not prejudicial where, assuming that steps one and two of *Collette* had been satisfied, clear and convincing evidence rebutted the veteran's evidence of service incurrence).

Finally, the appellant argues on appeal that, although "the BVA consistently denies the origin and nexus" of his current conditions, his SMRs would document the claimed bombing incident, and apparently believes that the records, which are unavailable due to no fault of his own, would be sufficient to well ground his claim. We note initially that, for the purposes of this appeal we have assumed the truth of the appellant's description of events in service. However, as discussed above, the veteran has failed to submit sufficient evidence of a causal nexus between those events and his current condition. Even if his SMRs were available, those records could not demonstrate the relationship between the appellant's alleged in-service injury and his condition today. *See Caluza, supra.*

## IV.

Upon consideration of the record, the Secretary's motion for summary affirmance, and the appellant's informal brief, the Court holds that the appellant has not demonstrated that the Board committed either factual or legal error which would warrant reversal or remand. *Gilbert v. Derwinski*, 1 Vet.App. 49 (1990); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Danville Plywood Corp. v. United States*, 899 F.2d 3 (Fed.Cir.1990). The Court also is satisfied that the BVA decision meets the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1), and the benefit of the doubt doctrine of 38 U.S.C. § 5107(b). *See Gilbert, supra.* Summary disposition, however, is not appropriate. *See Frankel v. Derwinski*, 1 Vet.App. 23 (1990). Accordingly, the Secretary's motion for summary affirmance is granted in part, and the March 19, 1997, decision of the Board of Veterans' Appeals is AFFIRMED.