Stanley R. ARMS, Appellant,

v.

Togo D. WEST, Jr., Secretary of
Veterans Affairs, Appellee.

No. 96–1214.

United States Court of Veterans Appeals.

Feb. 11, 1999.

Sandra E. Booth was on the briefs for the appellant.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; Michael A. Leonard, Deputy Assistant General Counsel; and Andrew J. Waghorn were on the pleadings for the appellee.

Before KRAMER, HOLDAWAY, and STEINBERG, Judges.

STEINBERG, Judge, filed the opinion of the Court. HOLDAWAY, Judge, filed a concurring opinion.

STEINBERG, Judge:

The appellant, World War II combat veteran Stanley R. Arms, appeals through counsel a May 28, 1996, decision of the Board of Veterans' Appeals (Board or BVA) denying Department of Veterans Affairs (VA) service connection for wounds of the lower extremities (legs), frostbite of the feet, a skin disorder of the feet, hearing loss of the left ear, a low back disorder, and a bilateral eye disorder and denying an increased rating for a fracture of the right third metatarsal (toe) and for degenerative changes and narrowing of right-shoulder joint space. Record (R.) at 16–17. The appellant has filed a brief and a reply contesting all but the bilateral-eye-disorder claim. The Secretary has filed a motion for remand of a claim for leg scars and summary affirmance by a single judge of the remainder of the Board's decision. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will deny the Secretary's motion in part and affirm in part the Board decision and vacate it in part and remand two matters.

## I. Facts and Procedural History

The appellant is a combat veteran, who served in the U.S. Army during World War II from February 1942 until November 1945 and who received several decorations and

citations, including a Purple Heart. R. at 20, 117, 315, 321. His service entrance examination report is essentially normal. R. at 23–4. In service, he suffered an acute suppurative appendicitis (R. at 29–60) and a "March fracture" of the third toe of the right foot (R. at 62–85), and was diagnosed as having borderline mental deficiency (R. at 90). In February and March 1944, he reported pain in his ankles (R. at 91, 95), and an Army physician diagnosed arthritis (R. at 108–09); a radiologist, however, found no evidence of arthritis (R. at 99).

In November 1944, the veteran suffered injuries from a shell blast, including damage to the right arm (R. at 110), moderate hemorrhage of the left tympanic membrane, (R. at 111), and a mild cerebral concussion (R. at 110–21). He was diagnosed as having moderate anxiety. R. at 117. On January 31, 1945, an Army medical consultation form recorded: "Patient twitches head, has tremors of right hand, second injury, first on paralyzed legs & right arm, second injury resulted in a paralysis of [illegible] arm." R. at 125–26. He was hospitalized in February–March 1945 for 21 days for complaints "of almost constant pain in right side of head, ringing of right ear and constant aching in chest". R. at 130. He was diagnosed as having: "1. Psychoneurosis, anxiety state (combat exhaustion), acute, mod. sev. improved. LOD [line of duty]: Yes. 2. Concussion, shell blast, cerebral, mild, [illegible]. LOD: Yes. 3. Tinnitus, right ear, moderate, due to concussion. LOD: Yes." *Ibid.* An Army physician noted that he reported the following: "[In November] he was dazed by a blast. Was shaky and weak and was hospitalized[,] receiving narcotherapy for a few days. After 3 weeks returned to his outfit[;] . . . 3 days later when under a barrage he was rendered unconscious by a shell . . . and evacuated to the [United Kingdom on December 8, 1944]". *Ibid.* At that time, he was found to have markedly diminished hearing in his right ear, and he complained of roaring in his ears; the impression was post-traumatic tinnitus. R. at 128–29. His November 1945 separation examination report noted right-shoulder pain, a concussion, and an in-service appendectomy, but otherwise reported essentially normal results. R. at 123. In

December 1945, he filed a claim for VA non-service-connected pension or service-connected compensation. R. at 133–34. A January 1946 VA regional office (RO) decision granted service connection for right-ear and left-ear otitis media chronic catarrhal with defective hearing and for the appendectomy scar (both noncompensable), but denied service connection for a right-shoulder injury. R. at 137. In July 1948, he was diagnosed as having arthritis of the lumbar vertebrae. R. at 143.

In March 1985, the veteran sought an increased rating for his right ear, claiming that his condition had worsened and that he had constant ringing in his ears. R. at 152. He submitted records showing an impression of a ruptured tympanic membrane (R. at 161) and complaints of bilateral tinnitus (R. at 163). A March 1993 audiology examination report showed "Type A tymps bilaterally" and poor reliability due to inconsistent responses from the veteran. R. at 164. In that month, he filed a claim for an appendectomy scar, back pain, leg wounds, a foot infection, a right-shoulder injury, a bilateral hearing defect, and a bilateral eye condition. R. at 153–58. In October 1993, he filed a claim for service connection for frozen feet; he claimed that he received treatment at a field hospital in 1944 for shrapnel wounds, a concussion, and hearing problems. R. at 167.

An October 1993 VA compensation and pension examination report diagnosed bilateral tinnitus and sloping sensorineural high-frequency hearing loss with good speech recognition (R. at 170–71), a remote history of a right-shoulder injury without current manifestation of pathology and without degenerative changes (R. at 173), and a history of shrapnel wounds to both legs without residual foreign bodies or residual pathology due to shell-fragment wounds, but noting peripheral vascular changes (R. at 175, 182). It was also reported that he did not meet the diagnostic criteria for post-traumatic stress disorder (PTSD). R. at 178–81. The veteran was diagnosed as having tinea pedis, severe, bilateral (R. at 184) and severe degenerative changes and chronic lumbosacral strain in his back (R. at 185, 189). A December 1993 VARO decision denied service connection for

leg wounds, frostbite and residuals (foot condition), hearing loss, back or spinal condition, bilateral eye condition, and PTSD, and denied increased ratings for an appendectomy scar, left-ear hearing loss, and right-ear hearing loss (all noncompensable). R. at 191–96. The RO did grant service connection for right-shoulder degenerative changes (noncompensable), a right-foot third toe fracture (noncompensable), and tinnitus (rated at 10%). *Ibid.* The veteran submitted a Notice of Disagreement (NOD) as to the RO decision (R. at 202–05) and submitted a letter from his wife describing his various conditions (R. at 207–11). A March 1994 RO decision confirmed the earlier decision denying service connection for a bilateral eye condition, leg wounds, a left-ear hearing loss, frostbite, and a back disorder, and denying a compensable rating for the right-shoulder condition. R. at 214–16. The RO also denied compensation for service-connected "otitis media" (inflammation of the middle ear or tympanitis, Dorland's Illustrated Medical Dictionary 1204 (28th ed.1994)). R. at 214. The veteran continued to disagree (R. at 222), and the RO issued a Statement of the Case (SOC) (R. at 226–32). The veteran submitted a VA Form 9, Substantive Appeal to the BVA. R. at 234.

The veteran testified under oath at a September 1994 hearing at the RO about how he had been injured during the war by a land mine and shell blasts. R. at 253–66. He stated specifically that at one point when his unit was being attacked he did as he had been taught in training (fell to the ground and rolled) so that shots could not be fired straight and directly upon him, at which time he rolled on to a land mine that injured his legs, for which injury he was treated at a field hospital. R. at 255. He explained that this was the first injury he had received and that the bombing injury or shell blast had come later. R. at 255–57; *see also* R. at 130 (veteran reported in 1945 that first explosion occurred about 24 days before the second). He also testified about treatment that he had received for frostbite and the current condition of his feet. R. at 258–62. The hearing officer confirmed the earlier denial of service connection for the lower extremities, frostbite and a foot condition, left-ear hearing

loss, a back condition, and a bilateral eye condition, and confirmed the noncompensable ratings for a right-foot third toe fracture and a right-shoulder disability. R. at 291–94. An April 1995 RO decision continued the denial of service connection for wounds to the lower extremities. R. at 321. At a hearing before the BVA, the veteran presented sworn testimony to the same effect as his earlier testimony, including a statement that his back condition had resulted from a shell blast. R. at 391. In the May 28, 1996, BVA decision here on appeal, the Board denied service connection for wounds of the lower extremities, frostbite of the feet, a skin disorder of the feet, hearing loss in the left ear, a low back disorder, and a bilateral eye disorder and denied a compensable rating for a fracture of the right third toe and for degenerative changes and narrowing of the right-shoulder joint space. R. at 16–17.

## II. Analysis

The appellant argues that the BVA failed to conduct properly the three-step sequential analysis required by *Collette v. Brown,* 82 F.3d 389 (Fed.Cir.1996), and that, hence, the Court should reverse as to the low back disorder and the wounds of the lower extremities and remand as to the frostbite, skin disorder, and left ear claims. Appellant's Brief (Br.) at 6–7. The appellant further argues that the increased-rating claims for the right shoulder and the right third toe should be remanded for an adequate medical examination and so that the BVA can properly consider the appellant's complaints of pain and loss of function. Br. at 7. In addition, the appellant contends that the BVA failed to obtain records of his having been treated for ear, leg, and back conditions within one year after his separation from service. Br. at 20. Finally, he argues that his claim for service connection for a bilateral ankle condition was not adjudicated. Br. at 20–21.

The Secretary responds that despite the appellant's status as a combat veteran he has "failed to submit competent evidence on one or more of the three elements required to well ground his [service-connection] claims under *Caluza v. Brown,* 7 Vet.App. 498 (1995)", *aff'd per curiam,* 78 F.3d 604 (Fed. Cir.1996) (table), and that "the BVA's factual

findings regarding the increased rating claims have a plausible basis in the record". Secretary's Br. at 2. The Secretary also asserts that the appellant waived his service-connection claim for a bilateral eye disorder because he did not contest the Board's denial of that claim (Br. at 2) and that the appellant has not sufficiently raised a claim for service connection for bilateral chronic arthritis of the ankles. Br. at 21–22. The Secretary concedes that a claim for leg scars from in-service shell-blast wounds was not adjudicated and should be remanded (Br. at 1, 20–21) but maintains that the BVA decision should be affirmed in all other respects (Br. at 1, 23).

### A. Miscellaneous Claims

In his brief, the appellant expressly excepts his bilateral-eye-disorder claim from his request that the BVA determinations be reversed or vacated (R. at 3, 7, 21); thus, the Court considers that he has abandoned that claim on appeal and will not review it. *See Ford v. Gober*, 10 Vet.App. 531, 535–36 (1997); *Degmetich v. Brown*, 8 Vet.App. 208, 209 (1995), *aff'd*, 104 F.3d 1328 (Fed.Cir. 1997). In regard to the appellant's claim for service connection for bilateral-ankle arthritis, we hold that the record provides no evidence of the veteran's having filed either a formal or an informal claim under 38 U.S.C. § 5101(a) or 38 C.F.R. § 3.155 (1998); *see also Jones (Ethel) v. West*, 136 F.3d 1296, 1299 (Fed.Cir.1998), nor is there evidence of an NOD conferring jurisdiction on this Court as to an RO's determination on or failure to adjudicate this claim. *See* Veterans' Judicial Review Act, Pub.L. No. 100–687 § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note); *Hazan v. Gober*, 10 Vet.App. 511, 516–17 (1997); *Isenbart v. Brown*, 7 Vet.App. 537, 540 (1995); *Hamilton v. Brown*, 4 Vet.App. 528, 531–32 (1993), *aff'd*, 39 F.3d 1574 (1994).

### B. Well Groundedness of Service–Connection Claims

■ The Board found, without analysis, "that the [appellant's] claims are 'well grounded'". R. at 6. In a claim for service connection, a VA claimant has the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded. 38 U.S.C. § 5107(a); *see also Robinette v. Brown*, 8 Vet.App. 69, 73 (1995). A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a) ]." *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). A well-grounded service-connection claim under 38 U.S.C. § 1110 generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the asserted in-service injury or disease and the current disability. *See Caluza*, 7 Vet.App. at 506; *see also Epps v. Gober*, 126 F.3d 1464, 1468 (Fed.Cir.1997) (expressly adopting definition of well-grounded claim set forth in *Caluza, supra* ), *cert. denied sub nom. Epps v. West*, —— U.S. ——, 118 S.Ct. 2348, 141 L.Ed.2d 718 (1998) (mem.); *Heuer v. Brown*, 7 Vet.App. 379, 384 (1995) (citing *Grottveit v. Brown*, 5 Vet.App. 91, 93 (1993)). Alternatively, the second and third *Caluza* elements can also be satisfied under 38 C.F.R. § 3.303(b) (1998) by (a) evidence that a condition was "noted" during service or during an applicable presumption period; (b) evidence showing postservice continuity of symptomatology; and (c) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the postservice symptomatology. *See Savage v. Gober*, 10 Vet.App. 488, 495–97 (1997). For purposes of determining whether a claim is well grounded, the credibility of the evidence in support of the claim is generally presumed. *See Robinette*, 8 Vet.App. at 75. A Board determination whether a claim is well grounded is subject to de novo review by the Court under 38 U.S.C. § 7261(a)(1). *See Robinette*, 8 Vet.App. at 74; *Grivois v. Brown*, 6 Vet.App. 136, 139 (1994); *Grottveit, supra*.

■ Although evidence of service incurrence is usually shown by reference to a veteran's service medical records (SMR), section 1154(b) of title 38, United States Code, relaxes the evidentiary requirements for ad-

judication of certain combat-related VA-disability-compensation claims. *See Velez v. West,* 11 Vet.App. 148, 153 (1998) (citing *Jensen v. Brown,* 19 F.3d 1413, 1416–17 (Fed. Cir.1994); *Caluza,* 7 Vet.App. at 507; *Chipego v. Brown,* 4 Vet.App. 102, 105 (1993); *Sheets v. Derwinski,* 2 Vet.App. 512, 515 (1992); *Smith (Morgan) v. Derwinski,* 2 Vet. App. 137, 140 (1992)). Section 1154(b) provides:

> In the case of any veteran who engaged in combat with the enemy in active service with a military, naval, or air organization of the United States during a period of war, campaign, or expedition, the Secretary shall accept as sufficient proof of service[ ]connection of any disease or injury alleged to have been incurred in or aggravated by such service satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service, and, to that end, shall resolve every reasonable doubt in favor of the veteran. Service[ ]connection of such injury or disease may be rebutted by clear and convincing evidence to the contrary. The reasons for granting or denying service[ ]connection in each case shall be recorded in full.

38 U.S.C. § 1154(b). In addition, its implementing regulation, 38 C.F.R. § 3.304(d) (1998), provides:

> *Combat.* Satisfactory lay or other evidence that an injury or disease was incurred or aggravated in combat will be accepted as sufficient proof of service connection if the evidence is consistent with the circumstances, conditions or hardships of such service even though there is no official record of such incurrence or aggravation.

The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has held that there are three sequential determinations that must be made when a combat veteran seeks to show service incurrence using section 1154(b). *Collette,* 82 F.3d at 392–93. First, it must be determined whether the veteran has proffered "satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease". 38 U.S.C. § 1154(b). Second, it must be determined whether the proffered evidence is "consistent with the circumstances, conditions, or hardships of such service" (even though there is no official record of such incurrence or aggravation in service). *Ibid.* If the veteran satisfies inquiries (1) and (2), then the Secretary "shall accept" the veteran's evidence as "sufficient proof of service[ ]connection" unless the Secretary rebuts service connection by "clear and convincing evidence to the contrary". *Ibid.*

This Court has concluded that *Collette* did not obviate the other requirements set forth in *Caluza, supra* (i.e., current disability and medical nexus); rather, the first sentence of section 1154(b) relates only to incurrence— that is, "what happened [in service]" (*Caluza,* 7 Vet.App. at 507). *See Wade v. West,* 11 Vet.App. 302, 305 (1998) ("we hold again today, that a combat veteran who has successfully established the in-service occurrence or aggravation of an injury pursuant to [section] 1154(b) and *Collette,* must still submit sufficient evidence of a causal nexus between that in-service event and his or her current disability[,] as required by *Caluza* "); *Velez,* 11 Vet.App. at 154; *Turpen v. Gober,* 10 Vet.App. 536, 539 (1997) (citing *Caluza, supra,* and *Libertine, infra* ); *Brock v. Brown,* 10 Vet.App. 155, 162 (1997) ("reduced evidentiary burden provided for combat veterans by 38 U.S.C. § 1154(b) relate[s] only to the question of service *incurrence,* 'that is, what happened then—not the questions of either current disability or nexus to service, as to both of which competent medical evidence is generally required' ") (quoting Caluza, supra); *Cohen (Douglas) v. Brown,* 10 Vet.App. 128, 137 (1997); *Libertine v. Brown,* 9 Vet.App. 521, 524–25 (1996) (assuming court in *Collette* intended to supplement *Caluza* 's medical-nexus analysis, rather than obviate it, and reaffirming that *Caluza* analysis), *appeal dismissed for lack of jurisdiction,* 132 F.3d 50 (1997) (table). Our opinion in *Wade* reemphasized:

> "Section 1154(b) does not create a statutory presumption that a combat veteran's

alleged disease or injury is service[ ]connected[;] ... [it] does, however, considerably lighten the burden of a veteran who seeks benefits for an allegedly service-connected disease or injury and who alleges that the disease or injury was incurred in, or aggravated by, combat service."

*Wade,* 11 Vet.App. at 304 (quoting *Collette,* 82 F.3d at 392).

 Because section 1154(b) does not obviate the other two *Caluza* requirements, a combat veteran who uses lay testimony to show incurrence or aggravation must nevertheless generally proffer medical evidence to establish a current disability and its nexus to service because "lay persons are not competent to offer medical opinions". *Grottveit,* 5 Vet.App. at 93; *see also Meyer v. Brown,* 9 Vet.App. 425, 429 (1996); *Grivois,* 6 Vet.App. at 140; *Espiritu v. Derwinski,* 2 Vet.App. 492, 494–95 (1992). As to the use of continuity of symptomatology under § 3.303(b) to show service connection, however, lay testimony may be used to show continuity of symptomatology, as well as to show a nexus between the continuity of symptomatology and present disability when "such a relationship is one as to which a lay person's observation is competent". *Savage,* 10 Vet.App. at 497 (citations omitted).

 **1. Role of Section 1154(b).** In order to determine the proper application of section 1154(b) to the facts of this case, we have undertaken a reexamination of the language and structure of that provision, as well as of our opinion in *Caluza* and the Federal Circuit's *Collette* opinion, and contrasted adjudication under section 1154(b) for a combat veteran with adjudications under generally applicable law.

Under our general caselaw on determining well groundedness, approved by the Federal Circuit in *Epps,* 126 F.3d at 1468, only the evidence in support of the claim is to be considered and generally a presumption of credibility attaches to that evidence in order to decide whether or not **any** VA claimant has sustained the claimant's burden of submitting a well-grounded claim under section 5107(a). *See Robinette, Caluza,* and *King,* all *supra.* Application of section 1154(b) on the question of well groundedness, therefore, is largely superfluous. That is most assuredly not the case, however, as to adjudication of the merits of a claim.

As to service-connection claims generally, once such a claim is well grounded, then under the Court's long-standing decision in *Gilbert v. Derwinski* service connection must be awarded unless the evidence preponderates against the claim. *Gilbert,* 1 Vet.App. 49, 55–56 (1990); *see also Caluza,* 7 Vet.App. at 508. Every claimant who submits a well-grounded claim gets the benefit of this "equipoise rule". *Ibid.* However, as to a non-combat-related service-connection claim, merely because the claim is well grounded does **not** mean that it must be awarded simply because there is no contrary evidence (for example, further development will often be required, *see* 38 C.F.R. §§ 4.2, 19.9 (1998)). *See Robinette,* 8 Vet.App. at 76 ("to be well grounded a claim need not be supported by evidence sufficient for the claim to be granted"—that is, a plausible claim does not require that the evidence be at least in equipoise). Given the Court's general caselaw on well groundedness and section 1154(b)'s lightened evidentiary burden—approved by the Federal Circuit in *Epps* and *Collette,* both *supra,* respectively—section 1154(b) must be read as providing to a **combat** veteran's lay evidence as to a disease or injury alleged to be incurred or aggravated in service **more favorable treatment** at the merits-adjudication stage than applies to lay evidence submitted by other VA claimants. Any other conclusion would deprive section 1154(b) of meaning. *See Epps, supra; Collette,* 82 F.3d at 394. In sum, as is explained fully in the three succeeding paragraphs, we have concluded that under section 1154(b) once a combat veteran's claim for service connection of a disease or injury alleged to have been incurred in or aggravated in combat service is well grounded under *Caluza* and *Epps,* both *supra,* then the claimant prevails on the merits **unless** VA produces "clear and convincing evidence" to the contrary—that is, unless VA comes forward with **more than** a preponderance of the evidence against the claim.

The basis for the foregoing conclusion follows. Regarding adjudication under section

1154(b), in *Collette*, the Federal Circuit expressly agreed with this Court's "conclusion" in *Caluza* that "satisfactory evidence" meant "credible evidence". *Collette*, 82 F.3d at 393. As both opinions stressed, the lightened evidentiary burden for a combat veteran means that, as a general matter, only the evidence in support of the claim is to be considered in determining the credibility and consistency with service of "lay or other evidence of service incurrence or aggravation of such injury or disease" that the claimant submits as to "any disease or injury alleged to have been incurred in or aggravated by service", and that when such lay or other evidence is (1) satisfactory and (2) consistent with service it is so (3) "notwithstanding the fact that there is no official record of such incurrence or aggravation in such service". *Collette*, 82 F.3d at 394; *Caluza*, 7 Vet.App. at 511–12. All three of these criteria are contained in the first sentence of section 1154(b). The provision for rebuttal of what the Federal Circuit called "a factual presumption", *Collette*, 82 F.3d at 393, by clear and convincing evidence is set forth in section 1154(b)'s second sentence. In this regard, it is noteworthy that the VA regulation implementing section 1154(b) as to the sufficiency of lay evidence as part of a claim that an injury or disease was incurred or aggravated in combat reiterates the three criteria from section 1154(b)'s first sentence but does not include the reference from section 1154(b)'s second sentence to rebuttal of service connection by "clear and convincing evidence". 38 C.F.R. § 3.304(d). It is in this context that the Federal Circuit in *Collette* admonished that "[i]t is only in the third step (if the agency seeks to rebut the presumption of service connection) that evidence contrary to the veteran's claim of service connection, such as the Report of Medical Examination in this case, comes into play", and that before that step "the veteran's evidence standing alone" is to be considered. *Collette, supra; see also Caluza, supra* (ruling out consideration of SMR in terms of "the credibility" or "consistency with" criteria as applied to veteran's lay testimony). As discussed below, this distinction between what is part of the first sentence, as compared to the second and third sentences, of section 1154(b), has significance in terms of determining the full effect of the provision.

This analysis of the adjudication rules for general service-connection claims has led us to confirm our prior reading of "service[ ]connection" in the first sentence as referring only to the in-service incurrence or aggravation element of service connection, *see Wade, Velez, Turpen, Brock, Cohen, Libertine,* and *Caluza,* all *supra,* but to read that term in the second and third sentences as referring to the actual "granting" (as used in the third sentence) of service connection, that is, as providing when an ***award*** of service connection is to be made under section 1154(b). In view of this analysis, we conclude that section 1154(b)'s first and second sentences combine to provide two distinct advantages at the merits-adjudication stage to a veteran claiming a combat-related disability. First, once a combat veteran's claim for service connection "of a disease or injury alleged to have been incurred in or aggravated in [such combat] service" is well grounded by satisfaction of the three separate evidentiary elements set forth in *Caluza,* 7 Vet.App. at 506, and expressly approved by the Federal Circuit in *Epps, supra*—in-service incurrence or aggravation, current disability, and nexus between the two—then the role of the first sentence of section 1154(b) is to continue, into the merits-adjudication stage, the presumption of the credibility (that attached under section 5107(a) at the threshold stage for purposes of establishing a well-grounded claim) of the claimant's lay evidence about what happened in service in connection with combat, all subject to rebuttal under the second sentence of that subsection.

Second, in the event of such a well-grounded combat-related claim, the claimant prevails on the merits ***unless*** VA produces "clear and convincing evidence" to the contrary. Thus, section 1154(b) requires VA to come forward with ***more than*** a preponderance of evidence against a combat veteran's well-grounded claim, because "clear and convincing evidence is a higher evidentiary standard than the preponderance-of-the-evidence standard imputed by the benefit-of-the-doubt rule" as the burden that VA must meet under 38 U.S.C. § 5107(b) regarding every ***oth-***

er claim that is well grounded. *Caluza*, 7 Vet.App. at 510; *see also Gilbert, supra.* Under section 1154(b), then, evidence sufficient to well ground a claim as to a combat-incurred or combat-aggravated disease or injury *does* require—in contrast to the situation as to a regular, non-combat-related service-connection claim, *see Robinette, supra*—the award of service connection unless service connection is rebutted by clear and convincing evidence under section 1154(b)'s second sentence. And, pursuant to *Collette* and *Caluza*, both *supra*, it is at this merits-adjudication stage that medical-record or other adverse evidence is generally to be considered in rebuttal of the veteran's lay or other evidence of in-service incurrence or aggravation.

▇▇▇▇ That brings us to the role of the "notwithstanding" clause: "[N]otwithstanding the fact that there is no official record of such incurrence or aggravation in such service". From the legislative history, it appears that Congress considered the "notwithstanding" clause to be the key provision in the legislation. The clause was described in the following terms in the House Committee report on the legislation that was eventually enacted into law in 1941 in Public Law 361, ch. 603, 55 Stat. 847:

> ... It is desired to overcome the adverse effect of a lack of official record of incurrence or aggravation of a disease or injury *and treatment thereof* .... Your committee is impressed with the fact that *the absence of an official record of care or treatment* in many of such cases is readily explained by the conditions surrounding the service of combat veterans. It was emphasized in the hearings that the establishment of records of care or treatment of veterans in other than combat areas, and particularly in the States, was a comparatively simple matter as compared with the veteran who served in combat. *Either the veteran attempted to carry on despite his disability to avoid having a record made lest he might be separated from his organization or, as in many cases, the records themselves were lost.*
>
> *The difficulties which were encountered in assembling records of combat veterans have been repeatedly placed before your committee and are a matter of record in the hearings. In many cases it is the committee's belief that this has been a major obstacle to the veteran obtaining a service-connected rating.*

H.R. REP. No. 1157, at 2–3 (1941) (emphasis added). The Congress thus seems to have intended that a lack of reference to the incurrence of an injury or disease, or of care or treatment for it, in a combat situation not be used as a basis for defeating a combat veteran's claim for service connection of an assertedly combat-related disability. For that reason, and because the likelihood of incomplete recording of information seems as much of a concern as the nonrecording of it, in a combat-related situation, the absence of an official notation of diagnosis or treatment of a particular injury or disease in a particular SMR or SMRs may not be used by VA to rebut by clear and convincing evidence at the merits-adjudication stage. Rather, only *an affirmative finding* (including silence where a record purports to report on the existence of a particular condition or problem area) may be used as part of the clear and convincing evidence necessary to rebut pursuant to section 1154(b) the service-incurrence element of a service-connection claim. *See Collette*, 82 F.3d at 393; *Caluza*, 7 Vet.App. at 512. Whether or not the inferences that our concurring colleague would seek to draw from the lack of reference in an SMR are well taken, Congress has legislated against them.

▇▇▇ *2. Lower Extremities Wounds and Scars.* The appellant argues that the Board erroneously denied his service-connection claim for wounds of the legs due to a land mine explosion (Appellant's Br. at 11), and the Secretary concedes that the appellant has sufficiently raised a service-connection claim for leg scars due to those wounds (Secretary's Br. at 20–21). In 1993, the veteran filed a service-connection claim for leg wounds (R. at 155) and that same year a VA medical examiner diagnosed a "[h]istory of shell fragment wound with residual well-healed scars" and noted also that "[t]here does seem to be some vascular changes" (R. at 182). The RO denied service connection

for leg wounds (R. at 191), and the veteran filed an NOD (R. at 202–04). The veteran testified under oath in a 1996 BVA hearing that while under fire he had rolled into a land mine that had exploded and that, although he no longer had shrapnel in his legs, he did have scars from those wounds. R. at 387–89.

In regard to the claim for leg scars, there was an NOD (R. at 202) as to the RO's denial of the claim and sufficient information thereafter in the veteran's testimony (R. at 191) pointing out the scars so as to require the Board to address the leg-scars claim. *See Collaro v. West,* 136 F.3d 1304, 1308–310 (Fed.Cir.1998); *see also Collaro v. West,* 12 Vet.App. 63, No. 95–822 (per curiam order Nov. 12, 1998) (remanding claim to Board for failure to consider arguments made to Board but unaddressed in decision on appeal); *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991) (Board should have considered inferred claim). For the following reasons, the Court holds that this claim is well grounded. First, there was a medical diagnosis of scarring to show the requisite current disability in that respect. R. at 182. *See Caluza,* 7 Vet.App. at 506. Second, the veteran's testimony about the current scar and its connection to a wound incurred in service is sufficient on the question of nexus for well-groundedness purposes, because "the disability is of the type as to which lay observation is competent to identify the existence". *Savage, supra* (citing *Falzone v. Brown,* 8 Vet.App. 398, 403 (1995), and *Harvey v. Brown,* 6 Vet.App. 390, 393 (1994)); *see also Robinette,* 8 Vet.App. at 75–76 (evidence submitted in support of claim must " 'be accepted as true for the purpose of determining whether the claim is well grounded ... [except] when the evidentiary assertion [other than in a government record] is inherently incredible or when the fact asserted is beyond the competence of the person making the assertion' ") (quoting *King (Roderick) v. Brown,* 5 Vet.App. 19, 21 (1993)).

As to the question of the current vascular changes in his legs and whether those changes directly relate to the wounds, the examiner's diagnostic comment ("[The veteran] also complains of a few punctate scars especially on the left leg from shrapnel wounds during the same time as he had a concussion. He does seem to have some peripheral vascular changes and purpura", R. at 182) could be read as suggesting a possible connection between the vascular changes and purpura and a shell-fragment wound. We need not resolve that question, however, because, in light of our holding above that the scars claim is well grounded, we will remand for an examination as to the current condition of the scars and will also require that the examiner consider the appellant's vascular changes and purpura and any connection between those conditions and the in-service leg wounds.

As the above discussion illustrates, because of the *general* presumption of credibility that attaches to *any* claimant's evidence at this threshold stage, consideration of section 1154(b) is not necessary in order to determine whether the lower-extremity claim is well grounded—and may likewise seldom be necessary in order to determine whether any claim asserted based on combat is well grounded. It is at the adjudication on remand of this well-grounded claim on the merits that the relaxed evidentiary requirements provided by section 1154(b) for adjudication of combat-related service-connection claims will be for application.

█ In this regard, the Board, in concluding on the merits that the claim was not service connected, erred in two respects in the analysis that produced its finding that there was "clear and convincing evidence" in contradiction of the veteran's testimony that his wounds were incurred during his service. First, the Board stated:

"[T]here are rather extensive service medical records pertaining to treatment the veteran received following each of his combat injuries, none of which make any reference to complaints, treatment or diagnosis pertaining to wounds of the lower extremities. Simply put, with the amount of service medical records available for review, it would be expected that at least one of those records would contain some reference to wounds of the lower extremities."

R. at 10. However, according to the veteran's sworn testimony, his legs were injured when he rolled over a land mine while trying

to avoid being shot and he was treated in the field kitchen/dispensary; no SMR exists documenting such treatment (*see* R. at 255). That episode, he testified, predated by at least several weeks and was distinct from the shell blast that caused his concussion and ear problems (R. at 255–57) and as to which there *are* SMRs of treatment (R. at 110–21). The veteran's SMRs reflect, contrary to the Board's statement above, that the veteran did in January 1945 report that he sustained paralyzed legs from a combat injury (R. at 125) and reported in March 1945 that he had been dazed by a blast in November 1945 (although he did not there mention a leg injury) prior to the blast that injured his right ear (R. at 130). Second, the Board's reliance on the absence of an official record of treatment for that injury is also problematic. Based on the analysis in part II.B.1., above, of the role of the "notwithstanding" clause and its legislative history, we hold that the Board decision here incorrectly construed and applied section 1154(b) by using "the fact that there is no official record", 38 U.S.C. § 1154(b)—that is, the absence of an official notation of diagnoses of or treatment for a leg injury in the veteran's SMRs—to rebut the veteran's lay evidence.

Accordingly, after a medical examination carried out on remand, the service-connection claim for wounds and scars of the legs, which we have held is well grounded, may be denied under 38 U.S.C. § 1154(b) only if "clear and convincing evidence" (*more* than a preponderance of the evidence) is produced in accordance with this opinion to rebut an award of service connection—including the veteran's presumed-credible lay evidence. 38 U.S.C. § 1154(b).

### 3. Frostbite and Skin Disorder of Feet.

The Board concluded, without analysis, that the veteran's evidence on claims for frostbite and a skin disorder of the feet met the test for well groundedness (R. at 6), but did not establish service connection. R at 11. On de novo review, we disagree that the claims were well grounded.

■ As to the frostbite claim, even if the Court were to find that the service-incurrence element of the frostbite claim is satisfied under section 1154(b) on the grounds

that the appellant's testimony of in-service frostbite (R. at 262) is credible, thus satisfactory, and not inconsistent with the "circumstances, conditions, or hardships" of his combat service, 38 U.S.C. § 1154(b); 38 C.F.R. § 3.304(d), the claim would still not be well grounded. That is because no evidence was presented as to a connection between the current medical diagnosis of severe bilateral tinea pedis (R. at 184) and the frostbite incurred in service and there was no other medical evidence of a current foot condition let alone one identified as a residual of frostbite. *See Wade, Velez, Turpen, Brock, Cohen (Douglas), Libertine*, and *Caluza*, all *supra*.

■ Likewise, as to the foot-skin-disorder claim, even if the service-incurrence element is found to be satisfied under section 1154(b) on the grounds that the veteran's testimony is satisfactory and not inconsistent with his combat service as to in-service incurrence ("my feet and my toes would bleed a lot and run[;] it was awful my feet just gummed up" (R. at 262)) and although the medical diagnosis of tinea pedis (R. at 184) satisfies the current-disability element, the veteran provided no medical-nexus evidence connecting his current tinea pedis to an in-service skin disorder. We therefore also hold that this claim is not well grounded. *See Wade, Velez, Turpen, Brock, Cohen (Douglas), Libertine*, and *Caluza*, all *supra*.

■ ### 4. Hearing Loss in Left Ear.

The appellant has presented evidence sufficient to establish service incurrence as to his claim of hearing loss in the left ear even without the lightened evidentiary standard of section 1154(b) because the 1944 SMR included a notation of hemorrhage of the left tympanic membrane due to a shell blast (R. at 111). In addition, 1993 VA examination test results provided medical evidence of current disability, specifically "[b]ilateral sloping sensorineural high frequency hearing loss" and "[b]ilateral periodic high frequency tinnitus" (R. at 171), the tinnitus having been previously found service connected (R. at 191). Nonetheless, we hold that this claim is also not well grounded because the veteran has provided no medical evidence of a connection

between his left-ear hearing loss and the in-service shell blast injury or between that hearing loss and his service-connected tinnitus. *See Wade, Velez, Turpen, Brock, Cohen (Douglas), Libertine,* and *Caluza,* all *supra.*

The Court notes that our determination here does not preclude the veteran from providing medical nexus evidence for direct service connection or for service connection secondary to his tinnitus in order to support a subsequent claim to reopen as to his disallowed left-ear hearing loss claim. *See* 38 C.F.R. § 3.156(a) (1998); *Hodge v. West,* 155 F.3d 1356 (Fed.Cir.1998); *Henderson v. West,* 12 Vet.App. 11, 20–21 (1998). The same is true as to the other claims that we have held are not well grounded.

**5. Back Disorder.** In regard to his back disorder, even if it is concluded that the veteran has shown service incurrence under section 1154(b) on the ground that his testimony that a shell blast caused a back injury (R. at 391) is satisfactory and not inconsistent with his combat service, 38 U.S.C. § 1154(b); 38 C.F.R. § 3.304(d), and although there is evidence of current disability—a diagnosis of "severe degenerative change of the lumbar spine with spur formation and narrowing of the spaces" (R. at 189), we hold that this claim is also not well grounded because the veteran has not furnished medical evidence to connect those two elements. *See Wade, Velez, Turpen, Brock, Cohen (Douglas), Libertine,* and *Caluza,* all *supra.* The Court notes that the Board stressed as part of its merits adjudication of this claim that "no back disorder was noted by either history or clinical evaluation at the time of the veteran's November 1945 separation physical examination" (R. at 12); however, that separation examination record did not provide an affirmative determination of no back injury but merely contained no notation pertaining to the condition of the veteran's back (R. at 123). *See Collette,* 82 F.3d at 394; *Caluza,* 7 Vet.App. at 512.

**6. Nonprejudicial Error.** Although the BVA erred in finding that the claims for service connection for frostbite and a skin disorder of the feet, for left-ear hearing loss, and for a back disorder were well grounded, those errors did not result in prejudice to the appellant. *See* 38 U.S.C. § 7261(b) (Court shall take due account of rule of prejudicial error); *Edenfield v. Brown,* 8 Vet.App. 384, 390 (1995) (en banc). The outcome, disallowance of the claims, would be the same whether VA had found them not well grounded or, as in this case, adjudicated them on the merits. The appropriate remedy is therefore to affirm the BVA decision as to the disallowance of these claims. *Id.* at 391.

### C. Increased–Rating Claims

The appellant argues that the Board erroneously denied his appeal for a compensable rating for his service-connected fracture of the right third metatarsal and degenerative changes and narrowing of the right-shoulder joint space, because the Board did not adequately consider evidence of pain and because the October 1993 VA medical examination of his right shoulder was inadequate. Appellant's Br. at 18–19; Reply at 9–10. A claim for an increased rating is generally well grounded when an appellant indicates that he has suffered an increase in a service-connected disability. *See Proscelle v. Derwinski,* 2 Vet.App. 629, 631–32 (1992); *cf. Jones (Wayne) v. Brown,* 7 Vet.App. 134, 137–38 (1994). The veteran has asserted, in essence, that he has sustained such an increase (R. at 234), and the Court thus holds that these claims are well grounded. Pursuant to 38 U.S.C. § 5107(a), once a claimant has submitted a well-grounded claim, the Secretary is required to assist that claimant in developing the facts pertinent to the claim. *See* 38 U.S.C. § 3.159 (1998); *Littke v. Derwinski,* 1 Vet.App. 90, 91–92 (1990). The assignment of a rating is a factual determination, *Johnson (Brenda) v. Brown,* 9 Vet.App. 7, 9 (1996); *Lovelace v. Derwinski,* 1 Vet.App. 73, 74 (1990), and the Court reviews such factfinding under a "clearly erroneous" standard pursuant to 38 U.S.C. § 7261(a)(4); thus, if there is a "plausible" basis for the BVA determinations, the Court cannot overturn them. *Gilbert,* 1 Vet.App. at 53.

**1. Right–Shoulder Disorder.** In 1993, a VA medical examiner found: "The range of motion of [the veteran's] shoulders was full[,] as described in the physicians guide[,] without pain" and was "without cur-

rent manifestation of pathology". R. at 173. That finding provides a plausible basis for the Board's conclusion that the veteran's right-shoulder disorder did not reach the degree of limitation of motion required for a 20% disability rating under 38 C.F.R. § 4.71(a) (1998), Diagnostic Code (DC) 5201, notwithstanding the veteran's assertion of pain in his shoulder at his 1996 hearing. Moreover, the Court is satisfied that the Board's statement of reasons or bases on this point was adequate (R. at 15–16). *See Smallwood v. Brown,* 10 Vet.App. 93, 99 (1997); *Gilbert,* 1 Vet.App. at 56–57.

■ **2. Toe Disorder.** In denying a compensable rating (10%) for the appellant's metatarsal problem under DC 5284 in 38 C.F.R. § 4.71a for "moderate foot injury", the Board stated:

> [A] review of the VA examinations performed in October 1993 shows no complaints pertaining to the fracture of the right third metatarsal, and no clinical abnormalities on examination of the right foot. Significantly, at the time of the September 1994 hearing, the veteran was specifically questioned as to whether the broken toe treated during service was causing any current problems and the veteran responded, "Not now." While the Board does acknowledge that the veteran testified at the time of his February 1996 hearing that his right third toe produced pain, the Board finds that the veteran's earlier testimony *when coupled with the findings of the October 1993 VA examinations, or lack thereof,* contains greater probative value and demonstrates that the veteran's right third metatarsal fracture is productive of no ascertainable functional impairment.

R. at 14 (emphasis added). However, the 1993 October VA medical examination report in regard to the metatarsal disorder did not specifically address the veteran's right third toe. *See* R. at 170–89. Rather, the examiner commented generally that "[t]he patient has a bilateral foot infection". R. at 184. The Board's reliance on the absence of mention of the right third toe and of pain generally or specifically does not provide an adequate statement of reasons or bases for its determi-

nation of no functional impairment due to pain from the toe fracture. *See Gabrielson v. Brown,* 7 Vet.App. 36, 39–40 (1994); *Gilbert,* 1 Vet.App. at 56. In addition, under 38 C.F.R. § 19.9, the Board is directed to return to the RO any case in which "further evidence or clarification of the evidence ... is essential for a proper appellate decision". *See Chisem v. Brown,* 4 Vet.App. 169, 175 (1993); *Littke,* 1 Vet.App. at 93; *see also* 38 C.F.R. § 4.2 ("if a diagnosis is not supported by the findings on the examination report or if the report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes"). In light of the veteran's 1996 sworn testimony as to pain from his right third toe, which could cause functional impairment under DC 5284, the Court will remand this claim for a new examination that adequately evaluates the functional impairment due to pain in the veteran's right third toe, followed by a decision that specifically addresses the pain issue, supported by an adequate statement of reasons or bases. *See DeLuca v. Brown,* 8 Vet.App. 202, 207–08 (1995); *see also Smallwood, supra; Green (Victor) v. Derwinski,* 1 Vet.App. 121, 124 (1991) ("fulfillment of the statutory duty to assist ... includes the conduct of a thorough and contemporaneous medical examination, one which takes into account the records of the prior medical treatment, so that the evaluation of the claimed disability will be a fully informed one").

### D. Duty to Assist

The appellant claims that Nichols Hospital records covering treatment for leg, ear, and back conditions are not but should be in the record. Br. at 20; *see also* R. at 263–64. The back and left-ear claims are not well grounded and thus no duty to assist applies to these claims under 38 U.S.C. § 5107(a). Moreover, any duty to assist was satisfied by VA's effort to obtain records from the successor VA hospital to Nichols, the Louisville, Kentucky, VA Hospital, which reported that no records pertaining to the veteran were found for treatment from 1945 to 1950 (R. at 293). *See* 38 C.F.R. § 3.159 (1998); *Littke,* 1 Vet.App. at 91–92. As to the leg-wounds claim, which the Court has found well

202

grounded, the duty to assist has been satisfied by that same inquiry. *See ibid.* As to his right-shoulder claim, the appellant appears to argue for a remand to permit another VA examination because "it is clear that the examiner was not provided a copy of the appellant's SMRs so that he could review the nature and extent of the combat injuries" to his right shoulder. Br. at 19, 21; Reply at 9–10; *see Green (Victor), supra.* However, the medical examiner expressly noted the appellant's "history of injury to right shoulder" (R. at 173), which consisted of a mild right-shoulder sprain (R. at 112–20), but found "no current manifestation of pathology" (R. at 173). Hence, there was no duty-to-assist violation under section 5107(a) as to any of these claims.

### III. Conclusion

Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings, the Court holds that the appellant has not demonstrated that the BVA committed error—in its findings of fact, conclusions of law, procedural processes, articulation of reasons or bases, or consideration of the benefit-of-the-doubt rule—that would warrant remand or reversal under 38 U.S.C. §§ 1110, 1154(b), 5107, 7104(a), (d)(1), or 7261 or 38 C.F.R. §§ 3.303(b), 3.304(d), 4.71a DC 5201 as to those parts of the May 28, 1996, BVA decision that denied the appellant's claims for service connection of frostbite of the feet, a skin disorder of the feet, hearing loss of the left ear, and a lower back disorder and for an increased rating for degenerative changes and narrowing of right-shoulder joint space. The Court therefore affirms those parts of the BVA decision. Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings, the Court vacates the BVA decision as to the denial of the appellant's claims for service connection of wounds of the lower extremities and for an increase in rating for a fracture of the right third toe, *see* 38 U.S.C. §§ 1154(b), 5107, 7104(d)(1); 38 C.F.R. §§ 4.2, 4.71a DC 5284, 19.9; *Collette* and *Caluza,* both *supra; Chisem* and *Littke,* both *supra,* and remands those issues for further appropriate development and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see*

*Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991)—all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court). *See Allday v. Brown,* 7 Vet.App. 517, 533–34 (1995). The Secretary's motion is denied. "On remand, the appellant will be free to submit additional evidence and argument" on the remanded claims. *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West,* 11 Vet. App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.

HOLDAWAY, Judge, concurring:

The majority's holding that only an affirmative finding in the SMRs that the injury did not exist may serve as clear and convincing evidence to rebut the presumption of service incurrence under 1154(b) is too broad. Medical reports dated a relatively short time after an alleged injury, which fail to document a *substantial* and *visible* injury, are undoubtably probative of whether such an injury actually occurred during service, especially where the veteran's separation physical also fails to report any residuals of the injury. In this matter, the appellant's SMRs from November to December 1944 reported that the appellant was hospitalized for the greater part of December for treatment relating to injuries suffered from two shell blasts. That treatment took place only a short period after the appellant allegedly suffered shrapnel wounds from rolling over a

landmine while trying to escape enemy fire. Section 1154(b) does not preclude consideration of the fact that the treatment reports did not mention the shrapnel wounds when determining if the presumption of service incurrence has been rebutted. In fact, section 1154(b) does not preclude consideration of any evidence with respect to rebutting the presumption. The evidence in rebuttal must only be clear and convincing, i.e., it must have a high probative value. Section 1154(b) precludes weighing evidence that an injury had not been documented only when determining if the presumption attaches.

In this matter, the appellant alleges that he was treated at a field hospital for two to three weeks for his leg injuries. There are no records of such treatment. There are records pertaining to the first shell blast injuries which apparently occurred within a few days after the appellant was released from treatment from the landmine incident. The appellant stated that one piece of shrapnel went to the bone. However, there is nothing in the SMRs as to the shell blast injuries which indicates treatment of a leg wound. The appellant's separation physical failed to note any scars on his legs. That evidence is probative of the fact that he did not have scars on his legs. However, it is not necessarily dispositive. Therefore, I agree that the SMRs did not rise to the level of clear and convincing evidence. For that reason, under the peculiar facts in this case, the claim for service connection of the scars on the appellant's legs should be remanded for readjudication.