Citation Nr: 1104826 
Decision Date: 02/07/11 Archive Date: 02/14/11

DOCKET NO. 08-09 186 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Jackson, 
Mississippi


THE ISSUES

1. Whether there is new and material evidence to reopen a claim 
for service connection for a right foot disorder.

2. Entitlement to service connection for a right foot disorder.

3. Entitlement to service connection for hypertension.

4. Entitlement to service connection for migraine headaches.


REPRESENTATION

Appellant represented by: Mississippi Veterans Affairs 
Commission


ATTORNEY FOR THE BOARD

Rochelle E. Richardson, Associate Counsel
INTRODUCTION

The Veteran served on active duty from November 1952 to November 
1957.

This appeal to the Board of Veterans' Appeals (Board/BVA) is from 
a July 2007 decision of the Department of Veterans Affairs (VA) 
Regional Office (RO) in Jackson, Mississippi, which determined 
the Veteran had not submitted new and material evidence and, 
therefore, denied his petition to reopen his claim for service 
connection for a right foot disorder. The RO also denied his 
claims for service connection for bilateral hearing loss, 
migraine headaches, and hypertension. He appealed all of these 
claims.

The RO has since issued another decision, however, in September 
2009, during the pendency of the appeal, granting the claim for 
service connection for bilateral (i.e., right and left ear) 
hearing loss and assigning an initial 20 percent rating 
retroactively effective from January 25, 2007, the date of 
receipt of this claim. The Veteran has not since appealed for 
either a higher initial rating or earlier effective date. See 
Grantham v. Brown, 114 F.3d 1156 (Fed. Cir. 1997) (where an 
appealed claim for service connection is granted during the 
pendency of the appeal, a second Notice of Disagreement (NOD) 
thereafter must be timely filed to initiate appellate review of 
the claim concerning "downstream" issues such as the 
compensation level assigned for the disability and effective 
date). So the hearing loss claim is no longer on appeal.

Regarding the claims that remain, because of the Veteran's age, 
the Board advanced these claims on the docket pursuant to 
38 C.F.R. § 20.900(c) (2010). 38 U.S.C.A. § 7107(a)(2) (West 
2002).

In this decision, the Board is reopening the Veteran's claim for 
service connection for a right foot disorder because there is new 
and material evidence. Regrettably, though, the Board must then 
remand the underlying claim for service connection for a right 
foot disorder, as well as his claims for hypertension and 
migraine headaches, to the RO via the Appeals Management Center 
(AMC) in Washington, DC, for further development and 
consideration.
FINDING OF FACT

Although the Veteran did not appeal the RO's August 1994 rating 
decision denying his claim for service connection for a bilateral 
foot condition, so including concerning his right foot 
especially, additional evidence since received relates to an 
unestablished fact necessary to substantiate this claim and 
raises a reasonable possibility of substantiating it.


CONCLUSION OF LAW

The RO's August 1984 rating decision initially considering and 
denying the Veteran's claim for service connection for a 
bilateral foot condition is final and binding based on the 
evidence then of record because he did not appeal that decision; 
however, he since has submitted new and material evidence to 
reopen this claim as it concerns his right foot, in particular. 
38 U.S.C.A. §§ 5108, 7105 (West 2002); 38 C.F.R. §§ 3.104(a), 
3.156, 3.160(d), 20.200, 20.302, 20.1103 (2010).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. The Duties to Notify and Assist

Since the Board is reopening the claim for service connection for 
a right foot disorder on the basis of new and material evidence, 
and then remanding this claim for further development before 
readjudicating this claim on its underlying merits, the Board 
need not discuss at this juncture whether there has been 
compliance with the notice and duty to assist provisions of the 
Veterans Claims Assistance Act (VCAA). 38 U.S.C.A. §§ 5100, 
5103, 5103A; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). See, 
too, Quartuccio v. Principi, 16 Vet. App. 183 (2002); 
Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004) (Pelegrini 
II); Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), aff'd 
sub nom. Hartman v. Nicholson, 483 F.3d 1311 (2007); Mayfield v. 
Nicholson, 499 F.3d 1317, 1323 (Fed. Cir. 2007) (Mayfield IV); 
Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006); and Shinseki 
v. Sanders, 129 S. Ct. 1696 (2009). This, instead, is better 
determined once the additional development of the claim on remand 
is completed.

Furthermore, because the Board is reopening the claim for service 
connection for a right foot disorder on the basis of new and 
material evidence, the Board need not determine whether there has 
been sufficient VCAA notice to comply with the holding in Kent v. 
Nicholson, 20 Vet. App. 1 (2006), wherein the U.S. Court of 
Appeals for Veterans Claims (Court/CAVC) held that VA must both 
notify a claimant of the evidence and information that is 
necessary to reopen the claim and of the evidence and information 
necessary to establish entitlement to the underlying benefit 
being sought, i.e., service connection. To satisfy this 
requirement, VA adjudicators are required to look at the bases of 
the denial in the prior decision and provide the claimant a 
notice letter describing what evidence would be necessary to 
substantiate those elements required to establish service 
connection that were found insufficient in the previous denial. 
See also VA Gen. Couns. Mem., paras. 2, 3 (June 14, 2006), 
wherein VA's Office of General Counsel issued informal guidance 
interpreting Kent as requiring the notice to specifically 
identify the kind of evidence that would overcome the prior 
deficiency rather than simply stating the evidence must relate to 
the stated basis of the prior denial. Here, the Board is 
reopening the claim, regardless, so even were the Board to assume 
for the sake of argument that there has not been sufficient Kent 
notice, this is ultimately inconsequential and, therefore, at 
most nonprejudicial, i.e., harmless error. 38 C.F.R. § 20.1102.

II. New and Material Evidence to Reopen the Claim for a Right 
Foot Disorder

The RO originally considered and denied the Veteran's claim for a 
bilateral foot condition in an August 1994 rating decision. That 
same month, the RO sent him a letter notifying him of that 
decision and apprising him of his procedural and appellate rights 
in the event he elected to appeal. He did not appeal, however, 
so that decision became final and binding on him based on the 
evidence then of record. 38 U.S.C.A. § 7105; 38 C.F.R. §§ 
3.104(a), 3.160(d), 20.1103.

Since the RO has previously considered and denied this claim and 
the Veteran did not timely appeal the decision, the first inquiry 
is whether new and material evidence has been submitted since 
that decision to reopen the claim. 38 C.F.R. § 3.156(a). And 
irrespective of the RO's determination as to whether there is new 
and material evidence, so, too, must the Board make this 
threshold preliminary determination - before proceeding further, 
because it affects the Board's jurisdiction to adjudicate the 
claim on its underlying merits, i.e., on a de novo basis. 
Barnett v. Brown, 83 F.3d 1380, 1383-84 (Fed. Cir. 1996); Butler 
v. Brown, 9 Vet. App. 167, 171 (1996). If the Board finds that 
new and material evidence has not been submitted, then its 
analysis must end, as further analysis is neither required nor 
permitted. See Barnett, 83 F.3d at 1383-4. McGinnis v. Brown, 4 
Vet. App. 239 (1993) (Board reopening is unlawful when new and 
material evidence has not been submitted). See also Jackson v. 
Principi, 265 F.3d 1366 (Fed. Cir. 2001); VAOPGCPREC 05-92 (March 
4, 1992).

If, however, there is new and material evidence, then the Board 
must reopen the claim and review its former disposition. 38 
U.S.C.A. § 5108.

For a petition to reopen, as here, filed on or after August 29, 
2001, new evidence means existing evidence not previously 
submitted to agency decisionmakers; and material evidence means 
existing evidence that, by itself or when considered with 
previous evidence of record, relates to an unestablished fact 
necessary to substantiate the claim. New and material evidence 
can be neither cumulative nor redundant of the evidence already 
of record at the time of the last prior final denial of the claim 
sought to be opened, and it must raise a reasonable possibility 
of substantiating the claim. 38 C.F.R. § 3.156(a).

In determining whether evidence is "new and material," the 
credibility of the evidence in question must be presumed. Justus 
v. Principi, 3 Vet. App. 510, 513 (1992). But see Duran v. 
Brown, 7 Vet. App. 216 (1994) ("Justus does not require the 
Secretary [of VA] to consider the patently incredible to be 
credible").



The RO's August 1994 decision denying the Veteran's claim for a 
bilateral foot condition is the most recent final and binding 
decision on this claim, so it marks the starting point for 
determining whether there is new and material evidence. See 
Evans v. Brown, 9 Vet. App. 273, 283 (1996) (indicating VA is 
required to review for newness and materiality only the evidence 
submitted by a claimant since the last final disallowance of the 
claim on any basis to determine whether the claim should be 
reopened and readjudicated on the merits).

In that August 1994 RO decision, the basis of the denial of the 
claim for the bilateral, i.e., right and left, foot condition was 
that the Veteran's service treatment records (STRs) were 
unremarkable for any indication of a foot condition and his feet 
were normal during his then most recent VA examination. See 
Boyer v. West, 210 F.3d 1351, 1353 (Fed. Cir. 2000) 
(direct service connection generally requires evidence of a 
current disability with a relationship or connection to an injury 
or a disease or some other manifestation of the disability during 
service).

In this appeal, the Veteran is only requesting to reopen his 
claim as it specifically concerns his right foot; he is not 
petitioning to reopen his claim as it instead relates to his left 
foot. That said, based on the RO's previous grounds for denial 
of this claim in the August 1994 rating decision, new and 
material evidence would consist of competent evidence of either 
relevant in-service complaints or treatment for a right foot 
disorder or evidence at least indicating he currently has a right 
foot disorder of some sort.

The additional evidence submitted since that August 1994 RO 
decision includes the Veteran's VA treatment records documenting 
his complaints and treatment relating to bilateral foot symptoms 
and providing a diagnosis of bilateral neuropathy affecting his 
feet. See his March 2007 VA treatment notes. Consequently, 
this additional medical evidence is both new and material because 
it relates to an unestablished fact necessary to substantiate his 
claim by providing a current diagnosis of a disability affecting 
his right foot. So this additional evidence raises a reasonable 
possibility of substantiating this claim. See 38 C.F.R. 
§ 3.156(a). 


This evidence need not also establish the required correlation 
between this disorder and his military service. See Evans v. 
Brown, 9 Vet. App. 273, 283-84 (1996) (the newly presented 
evidence need not be probative of all the elements required to 
award the claim, just probative as to each element that was a 
specified basis for the last disallowance). In Hodge v. West, 
155 F.3d 1356, 1363 (Fed. Cir. 1998), the Federal Circuit Court 
reiterated this, noting that new evidence could be sufficient to 
reopen a claim if it could contribute to a more complete picture 
of the circumstances surrounding the origin of a claimant's 
injury or disability, even where it would not be enough to 
convince the Board to grant the claim. Therefore, this claim is 
reopened.


ORDER

As new and material evidence has been submitted, the claim for 
service connection for a right foot disorder is reopened, subject 
to the further development of this claim on remand.


REMAND

Under McLendon v. Nicholson, 20 Vet. App. 79 (2006), in 
disability compensation (service-connection) claims, VA must 
provide a medical examination when there is: (1) competent 
evidence of a current disability or persistent or recurrent 
symptoms of a disability, and (2) evidence establishing that an 
event, injury, or disease occurred in service or establishing 
certain diseases manifesting during an applicable presumptive 
period for which the claimant qualifies, and (3) an indication 
that the disability or persistent or recurrent symptoms of a 
disability may be associated with the Veteran's service or with a 
service-connected disability, but (4) insufficient competent 
medical evidence on file for the VA to make a decision on the 
claim. See also 38 U.S.C.A. § 5103A(d)(2) and 38 C.F.R. § 
3.159(c)(4).



When determining whether a VA examination is required under 
38 U.S.C. § 5103A(d)(2), the law requires competent evidence of a 
disability or symptoms of a disability, but does not require 
competent evidence of a nexus, only that the evidence indicates 
an association between the disability and service or a service-
connected disability. See Waters v. Shinseki, 601 F.3d 1274 
(Fed. Cir. 2010) 

Consequently, for the reasons and bases discussed below, the 
Board must remand the Veteran's claims for service connection for 
a right foot disorder, hypertension, and headaches.

As already mentioned, and cause for reopening his claim, the 
Veteran's VA treatment records confirm he has received a 
diagnosis of right foot peripheral neuropathy. So resolution of 
this claim turns on whether this condition is attributable to his 
military service. See Watson v. Brown, 4 Vet. App. 309, 314 
(1993) ("A determination of service connection requires a finding 
of the existence of a current disability and a determination of a 
relationship between that disability and an injury or a disease 
incurred in service.").

The Veteran claims he injured this foot during training exercises 
in December 1952 or January 1953, received medical treatment 
during service for the injury, and has chronic (meaning 
permanent) disability as a consequence of that trauma. 
Unfortunately, his service treatment records (STRs) are mostly 
missing, presumably having been destroyed in a 1973 fire at the 
National Personnel Records Center (NPRC), which is a military 
records repository. However, there is a daily sick-call report 
dated in December 1952 showing medical treatment for an unknown 
cause. So it is at least possible he was seen concerning this 
reported injury, although this remains unverified. In this 
circumstance, that is, given the unavailability of any other 
records concerning his service that might provide further 
clarification of the circumstances surrounding that instance of 
treatment, VA has a heightened duty 


to consider the applicability of the benefit-of-the-doubt rule, 
to assist him in developing his claim, and to explain the reasons 
and bases for its decision. See Cromer v. Nicholson, 19 Vet. 
App. 215, 217-18 (2005), citing Russo v. Brown, 9 Vet. App. 46, 
51 (1996). See also Cuevas v. Principi, 3 Vet. App. 542, 548 
(1992); O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991).

However, the mere fact that there are missing or unaccounted for 
STRs, while indeed unfortunate, does not obviate the need for the 
Veteran to still have medical nexus evidence supporting his claim 
by suggesting a correlation between his current right foot 
disorder and his military service - and, in particular, 
his claimed injury to this foot in service. See Milostan v. 
Brown, 4 Vet. App. 250, 252 (1993) (citing Moore v. Derwinski, 1 
Vet. App. 401, 406 (1991) and O'Hare v. Derwinski, 1 Vet. App. 
365, 367 (1991)). That is to say, missing or unaccounted for 
STRs do not lower the threshold for an allowance of a claim; 
there is no reverse presumption for granting a claim. The legal 
standard for proving a claim is not lowered; rather, the Board's 
obligation to discuss and evaluate evidence is heightened. See 
Russo v. Brown, 9 Vet. App. 46 (1996). Cf. Collette v. Brown, 82 
F.3d 389, 392-93 (Fed. Cir. 1996); Arms v. West, 12 Vet. App. 
188, 194-95 (1999).

In Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006), the 
Federal Circuit Court recognized lay evidence as potentially 
competent to support presence of disability, including during 
service, even where not corroborated by contemporaneous medical 
evidence such as STRs. In other words, the Board cannot 
determine that lay evidence lacks credibility merely because it 
is unaccompanied by contemporaneous medical evidence. Moreover, 
a Veteran is competent to report what occurred in service because 
testimony regarding first-hand knowledge of a factual matter is 
competent. See Washington v. Nicholson, 19 Vet. App. 363 (2005). 
The Board therefore is requesting an examination and opinion 
concerning whether the peripheral neuropathy now affecting the 
Veteran's right foot is a residual of his purported injury to 
this foot in service or, instead, the result of other factors 
unrelated to his military service.

Additionally, the Veteran claims that, while serving in Korea 
during the Korean Conflict, he was hospitalized for a week or two 
for hypertension and headaches and has continued to have these 
problems since. See the transcript of his July 2008 hearing 
before a local Decision Review Officer (DRO).

The Veteran's VA treatment records show he has the required 
diagnosis of hypertension, so the determinative issue is whether 
it dates back to his military service as he is alleging. See 
Maggitt v. West, 202 F.3d 1370, 1375 (Fed. Cir. 2000); D'Amico v. 
West, 209 F.3d 1322, 1326 (Fed. Cir. 2000); Hibbard v. West, 13 
Vet. App. 546, 548 (2000); and Collaro v. West, 136 F.3d 1304, 
1308 (Fed. Cir. 1998). Hypertension also may be presumed to have 
been incurred in service if it manifested to a compensable 
degree, meaning to at least 10-percent disabling, within one year 
of his discharge from service. 38 U.S.C.A. §§ 1101, 1110, 1112, 
1113, 1131, 1137; 38 C.F.R. §§ 3.307, 3.309(a).

The Veteran was provided a VA compensation examination concerning 
this claim in April 2010, and in June 2010 the VA examiner 
provided an opinion indicating the Veteran's hypertension is not 
due to or related to his perforated tympanic membrane (ear drum) 
in service because there are no anatomical or physiological 
manifestations of a perforated ear drum that could potentially 
result in a person's having hypertension. However, the VA 
examiner did not address the Veteran's more general assertion 
that his hypertension was incurred in service - whether it is 
related to the perforated tympanic membrane or not. 
So further supplemental comment is needed prior to deciding this 
claim. See Barr v. Nicoholson, 21 Vet. App. 303, 311 (2007) 
(holding that, once VA undertakes the effort to provide an 
examination when developing a service-connection claim, even if 
not statutorily obligated to do so, VA must provide an adequate 
one or, at a minimum, notify the claimant why one will not 
or cannot be provided).

The Veteran maintains that his headaches also began during 
service while hospitalized in Korea and are secondary to either 
his hypertension or his repeated exposure to excessively loud 
noise (i.e., acoustic trauma). See the October 2010 statement 
from his representative on VA Form 646.

Again, because the Veteran's STRs are mostly missing, through no 
fault of his, he is simply unable to document any complaints or 
treatment he may have received during service for headaches, 
including while hospitalized. But he is competent to say he 
experienced headaches while in service and even during the many 
years since his discharge from service. See Davidson v. 
Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 
492 F.3d 1372, 1377 (Fed. Cir. 2007). The Board will have the 
ultimate responsibility of determining whether his lay testimony 
concerning this also is credible so as to, in turn, have 
probative value. See Rucker v. Brown, 10 Vet. App. 67 (1997) and 
Layno v. Brown, 6 Vet. App. 465, 469 (1994) (distinguishing 
between competency ("a legal concept determining whether 
testimony may be heard and considered") and credibility ("a 
factual determination going to the probative value of the 
evidence to be made after the evidence has been admitted")).

The fact that the Veteran sustained acoustic trauma during 
service from repeated exposure to excessively loud noise already 
has been conceded when granting service connection for his 
bilateral hearing loss. See the RO's September 2009 rating 
decision. But there is no competent medical nexus evidence of 
record addressing the purported cause-and-effect relationship 
between his claimed headaches and that accepted noise exposure in 
service. And insofar as he also claims his headaches may be due 
to his hypertension, these claims are inextricably intertwined 
and should be considered concurrently. See, e.g., Harris v. 
Derwinski, 1 Vet. App. 180, 183 (1991) (indicating issues are 
"inextricably intertwined" when they are so closely tied together 
that a final decision concerning one or more of the claims cannot 
be rendered until a decision on another. These types of claims 
should be considered concurrently to avoid piecemeal adjudication 
of claims with common parameters). See also Ephraim v. Brown, 82 
F.3d 399 (Fed. Cir. 1996); and see Smith (Daniel) v. Gober, 236 
F.3d 1370, 1373 (Fed. Cir. 2001) (Where the facts underlying 
separate claims are "intimately connected," the interests of 
judicial economy and avoidance of piecemeal litigation require 
that the claims be adjudicated together.).



Accordingly, these claims are REMANDED for the following 
additional development and consideration:

(Please note, this appeal has been advanced on the Board's 
docket pursuant to 38 C.F.R. § 20.900(c) (2009). 
Expedited handling is requested.)

1. If possible, have the VA examiner that 
evaluated the Veteran in April 2010, and who 
subsequently submitted the medical nexus 
opinion in June 2010, provide supplemental 
comment concerning the likelihood 
(very likely, as likely as not, or unlikely) 
the Veteran's hypertension, though unrelated 
to his perforated tympanic membrane (ear 
drum) in service, nonetheless initially 
manifested during his service or 
alternatively to a compensable degree of at 
least 10-percent disabling within one year of 
his discharge from service, 
meaning by November 1958 (since he was 
discharged in November 1957). As a point of 
reference, according to 38 C.F.R. § 4.104, 
Diagnostic Code 7101, the minimum compensable 
rating of 10 percent for hypertension 
requires that his diastolic pressure have 
been predominantly 100 or more, or that his 
systolic pressure have been predominantly 160 
or more, or that he have had a history of 
diastolic pressure predominantly 100 or more 
requiring continuous medication for control.

In the event this VA examiner is no longer 
available to provide this additional comment, 
obtain this necessary additional opinion from 
someone else similarly qualified. If someone 
else has to comment, this may require having 
the Veteran reexamined, but this is left to 
the designee's discretion of whether 
additional examination is needed.




2. Schedule the Veteran for appropriate 
VA compensation examinations to determine the 
etiology of his right foot disorder and 
headaches.

Have the examiner(s) provide opinions as to 
the likelihood (very likely, as likely as 
not, or unlikely): (1) any currently 
diagnosed right foot disorder, but especially 
peripheral neuropathy, is related to the 
Veteran's military service, and particularly 
to his claimed right foot injury in service; 
and (2) that his headaches are related to his 
military service - either to the already 
accepted acoustic trauma in service that led 
to his now service-connected bilateral 
hearing loss or, in the alternative, that his 
headaches are proximately due to, the result 
of, or aggravated by his hypertension (but 
only if the hypertension, itself, is 
determined to be related to his military 
service).

The term "as likely as not" (at least 50 
percent probability) does not mean merely 
within the realm of medical possibility, 
rather that the weight of medical evidence 
both for and against a conclusion is so 
evenly divided that it is as medically sound 
to find in favor of causation as it is to 
find against it.

In offering these assessments, the 
examiner(s) must comment on the Veteran's 
reports of injury or disease in service and 
continuity of symptomatology since service. 
See Dalton v. Nicholson, 21 Vet. App. 23 
(holding that an examination was inadequate 
where the examiner did not comment on the 
Veteran's report of in-service injury and 
instead relied on absence of evidence of a 
disability in the service treatment records 
to provide a negative opinion).

Since most of the Veteran's service treatment 
records are unavailable for consideration, 
through no fault of his, there is little-to-
no chance of him documenting his alleged 
complaints or treatment in service, including 
his purported hospitalization. So, 
recognizing this, the examiner 
should consider whether the asserted events 
in service, if assumed for the sake of 
argument occurred as alleged, could have led 
to the currently claimed disabilities. 
The Board will have the ultimate 
responsibility of assessing the Veteran's 
credibility regarding the actual occurrence 
of these claimed events.

The claims file, including a complete copy of 
this remand, must be made available to the 
designated examiner(s) for review of the 
pertinent medical and other history.

The Veteran is hereby advised that failure to 
report for this examination, without good 
cause, may have detrimental consequences on 
these pending claims for service connection. 
See 38 C.F.R. § 3.655.

3. Then readjudicate the claims in light of 
all additional evidence obtained. If any 
claim is not granted to the Veteran's 
satisfaction, send him and his representative 
a supplemental statement of the case (SSOC) 
and give them time to submit additional 
evidence and/or argument in response before 
returning the file to the Board for further 
appellate consideration of any remaining 
claim(s).

The Veteran has the right to submit additional evidence and 
argument concerning the claims the Board has remanded. 
Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law 
requires that all claims that are remanded by the Board of 
Veterans' Appeals or by the United States Court of Appeals for 
Veterans Claims for additional development or other appropriate 
action must be handled in an expeditious manner. See 38 U.S.C.A. 
§§ 5109B, 7112 (West Supp. 2009).




______________________________________________
KEITH W. ALLEN
Veterans Law Judge, Board of Veterans' Appeals


 Department of Veterans Affairs