Citation Nr: 1607934 
Decision Date: 02/29/16 Archive Date: 03/04/16

DOCKET NO. 10-00 242A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Whether new and material evidence has been received to reopen a claim of service connection for residuals of a cold weather injury to left foot, and if so whether service connection may be granted.

2. Entitlement to service connection for cold weather injury to the right foot.

3. Entitlement to service connection for a low back disorder, to include as secondary to the service-connection bilateral knee disability.

4. Entitlement to a total disability rating based on individual unemployability (TDIU). 


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

J. H. Nilon, Counsel


INTRODUCTION

This appeal has been advanced on the Board's docket pursuant to 38 U.S.C.A. § 7107(a)(2) (West 2014) and 38 C.F.R. § 20.900(c) (2015). 

The Veteran served on active duty from February 1945 to September 1971, including World War II, the Korean Conflict and Vietnam. His awards and decorations include the Purple Heart Medal, the Presidential Unit Citation and the Combat Action Ribbon.

This matter comes before the Board of Veterans' Appeals (Board) on appeal of a November 2007 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida that in relevant part denied service connection for a low back disorder. Also on appeal is a March 2009 RO rating decision that in relevant part reopened a previously-denied claim of service connection for residuals of a cold weather injury to the left foot but denied the claim on the merits, and also denied service connection for a cold weather injury to the right foot. Finally, also on appeal is an April 2010 RO rating decision that denied entitlement to a TDIU.

Although the March 2009 rating decision reopened the previously-denied claim of service connection for residuals of a cold weather injury to the left foot and adjudicated the merits, the Board is neither required nor permitted to analyze the merits of a previously denied claim if new and material evidence has not been submitted. Butler v. Brown, 9 Vet. App. 167, 171 (1996). The Board has accordingly characterized the issue as shown on the title page.

The Board has remanded the case to the Agency of Original Jurisdiction (AOJ) on two occasions. In August 2014 the case was remanded in order to afford the Veteran a "Travel Board" hearing at the RO per his request, but the Veteran failed to appeal at the scheduled hearing in August 2015 due to medical reasons. Because it was unclear whether the Veteran wanted to have the hearing rescheduled the Board remanded the case once again to the AOJ in September 2015 for the purpose of scheduling the Veteran for a videoconference hearing from the RO; a hearing was duly scheduled in December 2015 but the Veteran's representative asked on his behalf that the hearing be cancelled because the Veteran was ill. The representative did not indicate whether the Veteran wants the hearing to be rescheduled yet again; however, the Veteran has now missed two scheduled hearings and has not asked that the hearing be rescheduled for a third time. The Board will accordingly proceed with adjudication of the appeal.


FINDINGS OF FACT

1. Service connection for residuals of a cold weather injury to left foot was denied by a rating decision in March 2004; the Veteran withdrew his appeal on the issue prior to promulgation of a decision by the Board, and the rating decision of March 2004 is accordingly final.

2. Evidence received since March 2004 relates to an unestablished fact necessary to substantiate the claim for service connection for residuals of a cold weather injury to the left foot.

3. The Veteran's diagnosed peripheral neuropathy of the bilateral feet is not residual to exposure to cold weather in service.

4. The Veteran's back disorder, to include arthritis, became manifest many years after the Veteran's discharge from service and is not shown to be etiologically related to service or to be caused or aggravated by a service-connected disability.

5. The Veteran's service-connected disabilities do not render him unable to obtain and maintain gainful employment consistent with his education, training and work experience.
CONCLUSIONS OF LAW

1. New and material evidence has been received, and the previously-denied claim of service connection for residuals of a cold weather injury to the left foot is reopened. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156 (2015).

2. The requirements to establish entitlement to service connection for cold weather injury to the left foot have not been met. 38 U.S.C.A. §§ 1101, 1110, 1131, 1137, 5107 (West 2014); 38 C.F.R. § 3.303 (2015). 

3. The requirements to establish entitlement to service connection for cold weather injury to the right foot have not been met. 38 U.S.C.A. §§ 1101, 1110, 1131, 1137, 5107 (West 2014); 38 C.F.R. § 3.303 (2015). 

4. The requirements to establish entitlement to service connection for a low back disorder have not been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2015). 

5. The requirements to establish entitlement to TDIU have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.16 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2014)) redefined VA's duty to notify and assist a claimant in the development of a claim. VA regulations for the implementation of the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2015).

The notice requirements of the VCAA require VA to notify a claimant of what information or evidence is necessary to substantiate the claim; what subset of the necessary information or evidence, if any, the claimant is to provide; and what subset of the necessary information or evidence, if any, the VA will attempt to obtain. 38 C.F.R. § 3.159(b) (2015). Compliant VCAA notice in regard to service connection for low back disorder, to include on a secondary basis, was provided to the Veteran by letters in December 2006 and May 2007, and he had ample opportunity to respond prior to the November 2007 rating decision on that issue. The Veteran was advised of the elements required to establish service connection for residuals of a cold weather injury to the feet by a letter in September 2008, and the Veteran had an ample opportunity to respond prior to the issuance of the March 2009 rating decision on appeal. Finally, the Veteran was provided VCAA-compliant notice regarding the elements required to establish entitlement to TDIU by a letter dated in August 2009, and he had ample opportunity to respond prior to the April 2010 rating decision on that issue.

Concerning the duty to assist, the record also reflects that VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran. The record includes service treatment records (STRs), service personnel records, private treatment records, VA treatment records and VA examination reports. The Veteran has not identified any further existing records that should be obtained before the appeal is adjudicated. 

The Veteran has been afforded appropriate VA examinations in support of his claims herein adjudicated. As noted in the Introduction, the Veteran has scheduled for two hearings before the Board but he cancelled the first and failed to appear at the second; the Board concludes that the Veteran's request for hearing has effectively been withdrawn.

Based on a review of the record, the Board finds that there is no indication that any additional evidence relevant to the issues to be decided herein is available and not part of the claims file. See Mayfield v. Nicholson, 499 F.3d 1317 (Fed. Cir. 2007). Therefore, the Board finds that duty to notify and duty to assist have been satisfied and will proceed to the merits of the issues on appeal.
Request to Reopen a Previously-Denied Claim

Generally, in order to prove entitlement to service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999). 

The RO originally denied service connection for residuals of a cold weather injury to the left foot in a rating decision issued in March 2004. The Veteran submitted a timely appeal, but as noted in a decision by the Board in August 2005 the Veteran withdrew his appeal prior to promulgation of a decision by the Board on the issue. The RO's rating decision in March 2004 is accordingly final. See 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. §§ 3.156(b), 20.302, 20.1103 (2015); see also Bond v. Shinseki, 659 F.3d 1362 (Fed. Cir. 2011); see also Buie v. Shinseki, 24 Vet. App. 242, 251-52 (2010). 

Generally, if a claim of entitlement to service connection has been previously denied and that decision became final, the claim can be reopened and reconsidered only if new and material evidence is presented with respect to that claim. 38 U.S.C.A. § 5108 (West 2014). New evidence is defined as existing evidence not previously submitted to agency decisionmakers. Material evidence means evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative, nor redundant of the evidence previously of record, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a). The threshold to reopen a claim is low. See Shade v. Shinseki, 24 Vet. App. 110, 118 (2010). For the purpose of establishing whether new and material evidence has been received, the credibility of the evidence, but not its weight, is to be presumed. Justus v. Principi, 3 Vet. App. 510, 513 (1992). 

The March 2004 rating decision specifically denied service connection for residuals of a cold weather injury to the left foot based on a determination that no such injury was documented in service treatment records and post-service treatment records showed no indication of treatment for an old cold weather injury. 

Evidence of record at the time of the March 2004 rating decision included service treatment records and VA outpatient treatment records dating from May-September 2003. As noted above, none of these records showed a current disability related to exposure to cold weather.

Evidence received since March 2004 includes a VA neurological consult in October 2008 in which the neurologist stated that electrodiagnostic evidence was consistent with chronic, mixed sensorimotor bilateral peripheral neuropathy. Thus, the new evidence relates to a previously unestablished fact (medical evidence of a disability) necessary to substantiate the claim for service connection for a left foot disability and is consequently material. Accordingly, the claim for service connection for residuals of a cold weather injury to the left foot is reopened.

Entitlement to Service Connection

Applicable Legal Principles

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d).

Generally, in order to prove entitlement to service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999). 

Where a veteran served continuously on active duty for 90 days or more during a period of war, or during peacetime service after December 31, 1946, and arthritis becomes manifest to a degree of 10 percent within one year from date of termination of such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. Similarly, if active tuberculosis becomes manifest to a degree of 10 percent or more within three years of termination of such service, such disease will be presumed to have been incurred in service. These presumptions are rebuttable by affirmative evidence to the contrary. 38 C.F.R. §§ 3.307, 3.309 (2015). 

Service connection may also be established for disability that is proximately due to or the result of a service-connected disability. 38 C.F.R. § 3.310(a) (2015). Further, a disability that is aggravated by a service-connected disability may be service-connected to the degree that the aggravation is shown. Allen v. Brown, 7 Vet. App. 439 (1995). However, VA will not concede that a nonservice-connected disease or injury was aggravated by a service-connected disease or injury unless the baseline level of severity of the nonservice-connected disease or injury is established by medical evidence created before the onset of aggravation or by the earliest medical evidence created at any time between the onset of aggravation and the receipt of medical evidence establishing the current level of severity of the nonservice- connected disease or injury. 38 C.F.R. § 3.310. 

The Board has reviewed all the evidence in the record. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that all the evidence submitted by the appellant or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. at 54.

Service connection for residuals of a cold weather injury to the left and right feet

The Veteran contends on appeal that he had an undocumented cold weather injury to the feet during the Chosin Reservoir campaign during the Korean Conflict. He acknowledges having not sought medical treatment at the time, but cites the nature of a combat situation in which there was no way to avoid getting frostbite.

The Veteran is shown to have participated in combat in Korea, having received a Purple Heart Medal for gunshot wound during that conflict. The Veteran's service personnel record also demonstrates that he participated in the Wonsan-Hungnam-Chosin Campaign in Northern Korea during the period 26 October to 13 December 1950. The Board is also well aware of the extreme cold weather conditions and exigent circumstances during the Chosin Reservoir battle. The Board accordingly accepts the Veteran's account of having suffered frostbite during combat operations in Korea, as he asserts. 

Satisfactory lay or other evidence that an injury or disease was incurred or aggravated in combat will be accepted as sufficient proof of service connection if the evidence is consistent with the circumstances, conditions, or hardships of such services even though there is no official record of such incurrence or aggravation. 38 U.S.C.A. § 1154(b); C.F.R. § 3.304(c). However, even under this combat presumption, current disability and medical nexus must be proved by competent medical evidence. See Wade v. West, 11 Vet. App. 302 (1998). See also Caluza v. Brown, 7 Vet. App. 498 (1995) (holding that an injury during service may be verified by medical or lay witness statements; however, the presence of a current disability requires a medical diagnosis, and, where an opinion is used to link the current disability to a cause during service, a competent opinion of a medical professional is required). 

The Veteran's service treatment record (STR) shows no evidence of cold weather injury, but this is explainable by the exigencies of the combat situation. However, the Veteran continued to serve on active duty for 20 more years, finally separating from service in September 1971. Careful review of the Veteran's STR after 1950 shows no indication of any residuals of a cold weather injury to the feet. Periodic physical examinations in September 1951, September 1952, August 1955, September 1958, January 1961, January 1962, August 1967, August 1964, August 1969 and March 1971 consistently and affirmatively show the feet to have been "normal" on examination. In the corresponding self-reported Reports of Medical History the Veteran consistently reported having no history of foot trouble. 

The Veteran had a VA podiatry consult in May 2008 in which he complained of neuropathy on the plantar aspect of both feet for the past several months. The podiatrist noted that the numbness might be related to osteophytes in the lower back or to excessive pronation of the feet. The podiatrist stated the Veteran would be referred for neurological evaluation if his numbness persisted.

The Veteran subsequently had a VA neurological consult in October 2008 in which he complained of a several-year history of numbness and paresthesias in the bilateral feet that had progressively worsened. He also complained of cramping (tightness) in the toes "like with frostbite in Korea." Neurological motor examination was abnormal, with extensor digitorum brevis (EDB) atrophy bilaterally, right worse than left, and decreased bulk in the bilateral lower extremities (BLE). Deep tendon reflexes (DTRs) were hypoactive bilaterally. Sensory examination showed subjective gradient decrease in stocking distribution in the BLE. Electrodiagnostic evidence was consistent with chronic, mixed sensorimotor peripheral neuropathy. There was no evidence of current radiculopathy involving either lower extremity, but there was evidence of a past static injury along the left S1 nerve root distribution without evidence of ongoing denervation. The neurologist stated that lumbar spinal stenosis could not be ruled out based on the current study. 

The Veteran had a cold weather injuries examination in January 2009, performed by a physician. The Veteran reported having been exposed to subzero temperatures in Korea and reported he had not sought treatment at that time. The Veteran reported having developed bilateral foot numbness in 2006 and having been provided prosthetic shoe inserts; he denied having had sensation of cold in the feet. The Veteran reported having had magnetic resonance imaging (MRI) of the spine in 2008 in which he complained of numbness in the feet, and his physician at the time stated the numbness was related to his back problem. Current review of symptoms noted numbness and tingling in both feet but no history of cold sensation, skin or nail abnormalities or muscle cramps. Examination of the feet showed blotchy or red skin color and skin cooler than normal, but otherwise normal (no fungus, ulceration, or callus, with skin thickness, moisture, texture, hair growth and nails all normal). Neurological examination of the lower extremities showed normal muscle strength but reduced reflexes and sensory. 

The examiner diagnosed right and left foot numbness of unknown etiology and stated an opinion that the Veteran's loss of feeling since 2006 is not the result of his history of cold weather exposure in Korea in the 1950s. The examiner stated as rationale that the Veteran's complaints began many years after he left the service. 

In his January 2010 substantive appeal the Veteran stated he suffered frostbite during the Chosin Reservoir campaign in Korea and that he has the classic symptoms of cold weather injury including neuropathy, poor circulation and extreme sensitivity to cold.

The evidence above demonstrates the Veteran has diagnosed peripheral neuropathy of the bilateral feet, and the Board has accepted the Veteran's assertion of having had a cold weather injury during service. However, competent and uncontroverted medical opinion of record, in the form of the VA examination report in January 2009, states that the Veteran's current disability is not related to such exposure during service. The examiner was demonstrably fully informed of the pertinent factual premises (i.e., medical history) of the case and provided a fully articulated opinion supported by a reasoned analysis; the opinion is accordingly deemed to be probative and may be relied upon by the Board. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 303-304 (2008). Further, the examiner's opinion is fully consistent with the medical evidence of record, including STRs after 1950 that affirmatively show the Veteran to have had no disability of the feet until many years after his service in Korea.

The Veteran has asserted his personal conviction that his claimed disability is related to his service in Korea. However, the etiology of a neurological disability such as peripheral neuropathy is a complex medical question not within the competence of a layperson. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Rather, it is the province of trained health care professionals to enter conclusions that require medical expertise, such as opinions as to diagnosis and causation. Jones v. Brown, 7 Vet. App. 134, 137 (1994). Further, the findings of a physician are medical conclusions that the Board cannot ignore or disregard. Willis v. Derwinski, 1 Vet. App. 66 (1991). The Board accordingly assigns a high probative value to the opinion of the VA examiner in concluding that the Veteran's claimed bilateral foot disorder is not residual to cold weather exposure in service.

Based on the evidence and analysis above the Board finds the Veteran's diagnosed peripheral neuropathy of the bilateral feet is not related to exposure to cold weather during service. Accordingly, the claim must be denied.

In reaching the above conclusion, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable in the instant appeal. See 38 U.S.C.A. § 5107(b) (West 2014); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert, 1 Vet. App. 49, 55-56.

Service connection for a low back disorder

The Veteran originally asserted that his claimed lumbosacral spine disorder is secondary to his service-connected left knee disability. However, in his January 2010 substantive appeal the Veteran stated he had injured his back in combat during the period November-December 1950; the injury was not documented due to the exigencies of combat, but he never recovered from that injury. The Board will accordingly consider entitlement to service connection on both a direct and secondary basis.

Review of the Veteran's STR does not show any disease or injury to the lower back (the Veteran did incur an injury to the cervical spine during service, for which he has been granted service connection). As noted above, an injury incurred during combat may be attributed to service if consistent with the circumstances, conditions, or hardships of such services even though there is no official record of such incurrence or aggravation; see 38 U.S.C.A. § 1154(b) and C.F.R. § 3.304(c). However, all in-service physical examinations of record, to include the separation examination in March 1971, consistently showed the spine as "normal." The corresponding self-reported Reports of Medical History are silent in regard to any previous or current back pain or problem. 

In December 2006 the Veteran submitted his present claim for service connection for a low back disorder, asserting therein that the claimed disability is secondary to his service-connected left knee disorder.

The Veteran had a VA examination of the left knee in October 2007, shortly after undergoing a total knee replacement. The Veteran was observed to have normal heel-to-toe mechanics and no functional limitations of walking or standing. In sum, there is no indication in the examination report that the left knee was causing or aggravating a current low back problem.

The Veteran had a VA X-ray of the lumbosacral spine in February 2008 that showed diffuse degenerative disc disease (DDD) with secondary hypertrophic arthritic changes. A subsequent VA X-ray in November 2008 showed DDD with lumbar spondylosis and facet osteoarthritis and no significant interval changes since the previous study. VA MRI of the lumbosacral spine in December 2008 showed subtle posterior listhesis L2 to S1 due to facet joint degenerative changes and possible ligamentous laxity, small central disc herniation L5/S1 and no bony canal or foraminal stenosis identified.

In July 2008 the Veteran had a VA examination of the cervical spine, knees, hands and other orthopedic (but not the lumbosacral spine). The examiner noted the Veteran to have normal gait. The examiner recorded the functional impairment associated with the Veteran's knee disability in detail; the report is silent in regard to any back problem associated with the service-connected knee disability.

The Veteran had a VA examination of the spine in October 2009, performed by a physician who reviewed the claims file. The Veteran complained of low back pain beginning in 2006 that he attributed to his service-connected left knee pain. The examiner performed an examination of the spine and noted clinical observations in detail. Current X-ray showed progressive DDD, facet osteoarthritis and Baastrup disease; X-ray of the pelvis showed severe DDD at L5-S1. The examiner diagnosed current lumbar DDD with moderate mechanical low back pain and no evidence of radiculopathy. The examiner stated an opinion that the Veteran's lumbosacral spine disorder is not caused or aggravated by the service-connected left knee disability. As rationale, the examiner stated that the Veteran's spine disorder is a normal and expected aging outcome, based on current orthopedic literature relating to causation and expected aging outcomes.

In January 2010, after the VA examination cited above, the Veteran submitted his substantive appeal asserting that his claimed low back disorder is residual to an undocumented injury in Korea that had bothered him ever since. 

The evidence of record establishes that the Veteran has diagnosed DDD of the lumbosacral spine. Accordingly, the first element of service connection on either a direct or secondary basis - medical evidence of a disability - is met. However, a veteran seeking disability benefits must establish not only the existence of a disability, but also an etiological connection between his military service and the disability. Boyer v. West, 210 F.3d 1351, 1353 (Fed. Cir. 2000),

Addressing first the question of service connection on a direct basis, the Veteran's account of an undocumented back injury in combat is deemed to be credible. The United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that in the case of a combat Veteran not only is the combat injury presumed, but so is the disability due to the in-service combat injury. Reeves v. Shinseki, 682 F.3d 988, 998-99 (Fed. Cir. 2012). To establish service connection, however, there must be the evidence of a current disability and a causal relationship between the current disability and the combat injury. Id. (citing Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). In this case, STRs affirmatively demonstrate that the Veteran's lumbosacral spine was normal on examination for 20 years after the undocumented back injury in Korea; further, the Veteran reported to a VA examiner in October 2009 that his low back pain actually began in 2006, more than 50 years after his service in Korea and more than 30 years after his discharge from service. The Board concludes the Veteran's current DDD is not related to an undocumented back injury in service or otherwise incurred in or directly related to service.

The Board also notes that the Veteran's lumbosacral spine was characterized as "normal" on separation from service and there is no indication of osteoarthritis to any degree prior to February 2008. The Board concludes that presumptive service connection for arthritis under 38 C.F.R. § 3.309(a) is not for application.

Turning to the question of service connection on a secondary basis, the Veteran has expressed his personal belief that his current DDD is related to the service-connected knee disability, but his belief is contradicted by the opinion of the VA examiner to the effect that the Veteran's DDD is the result of aging and not secondary to the service-connected disability. The Board places a higher probative value on the opinion of the VA examiner than that of the Veteran in regard to the etiology of DDD. Jandreau, 492 F.3d 1372; Kahana v. Shinseki, 24 Vet. App. 428 (2011).

In sum, based on the evidence and analysis above the Board finds the Veteran's lumbosacral spine disability became manifest many years after the Veteran's discharge from service and is not shown to be etiologically related to service or to be caused or aggravated by a service-connected disability. Accordingly, the claim must be denied.

As the preponderance of the evidence is against the Veteran's claim the benefit-of-the-doubt doctrine is not applicable. Ortiz, 274 F.3d 1361, 1364; Gilbert, 1 Vet. App. 49, 55-56.


Entitlement to TDIU

It is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. 38 C.F.R. § 4.16. A finding of total disability is appropriate, "when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation." 38 C.F.R. §§ 3.340(a)(1), 4.15.

A TDIU may be assigned, if the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that if there is only one such disability it is ratable at 60 percent or more, and that if there are two or more such disabilities at least one is ratable at 40 percent or more and the combined rating is 70 percent or more. 38 C.F.R. § 4.16(a).

For the purpose of one 60 percent disability, or one 40 percent disability in combination, the following will be considered as one disability: (1) disabilities of one or both upper or lower or one or both lower extremities, including the bilateral factor if applicable; (2) disabilities resulting from a common etiology or a single accident; (3) disabilities affecting a single body system, e.g., orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric; (4) multiple injuries incurred in action; or, (5) multiple disabilities incurred as a prisoner of war. 38 C.F.R. § 4.16(a).

The Veteran is service-connected for the following disabilities: left knee disability, rated at 30 percent; right knee disability, rated at 30 percent; cervical spine disability, rated at 20 percent; left middle finger disability, rated at 10 percent; left Achilles tendon disability, rated at 10 percent; hearing loss disability, rated at 0 percent; left knee scar, rated at 0 percent; and, right knee scar, rated at 0 percent. The Veteran's combined rating for service-connected disabilities is 70 percent. He accordingly does not meet the schedular threshold for TDIU under 38 C.F.R. § 4.16(a). However, because it is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated as totally disabled, rating boards should submit to the Director, Compensation Services, for extraschedular consideration all cases of veterans who are unemployable by reason of service-connected disabilities but who fail to meet the percentage standards set forth in 38 C.F.R. § 4.16(a). See 38 C.F.R. § 4.16(b). 

38 C.F.R. § 4.16 differs from 38 C.F.R. § 3.321 in that it does not require a finding that the schedular ratings are inadequate to compensate for the average impairment in earning capacity caused by a particular disability; rather, 38 C.F.R. § 4.16 requires only a finding that service-connected disabilities render a particular veteran unemployable. VAOPGCPREC 6-96 (August 16, 1996). 

For a veteran to prevail on a TDIU claim, the record must reflect some factor that takes the claimant's case outside the norm. The sole fact that a veteran is unemployed or has difficulty finding employment is not enough, since a high rating in itself is recognition that the impairment makes it difficult to obtain and keep employment; the question is whether the claimant is capable of performing the physical and mental acts required for employment, not whether the claimant can find employment. See Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). 

Consideration may be given to the veteran's education, training, and special work experience, but not to his age or to impairment caused by nonservice-connected disabilities. Id.; see also 38 C.F.R. §§ 3.341, 4.16, 4.19.

The Veteran's present informal claim for TDIU was received in August 2009. The Veteran's formal claim for TDIU was received in May 2010; he asserted therein that he had last worked full-time in 1975 and that he was rendered unemployable due to "all service connected conditions." He also indicated by filling in a bubble that he had completed four years of college but he did not identify an academic degree and did not identify any additional occupational training.

In July 2008 the Veteran had a VA examination of the cervical spine, knees, hands and other orthopedic. The examiner noted the Veteran to be retired in 1998 due eligibility by age or duration of work. The examiner stated that the service-connected cervical spine disability would prevent exercise and sports; cause moderate impairment of chores and recreation; and, cause mild impairment of traveling and shopping; also, any type of overhead reaching or material handling would increase the Veteran's cervical spine pain. The examiner stated the service-connected knee disability would prevent sports and cause mild impairment of chores and recreation; the disability would also cause difficulty with squatting or kneeling. The examiner stated that the service-connected left hand disability would prevent sports and cause moderate impairment of chores or exercise; also, any type of repetitive heavy left upper extremity motor manipulation would increase the pain in the Veteran's left middle finger. The examiner also noted the Veteran to be right-hand dominant. 

The Veteran had a VA cold weather injuries examination in January 2009 in which, as in the July 2008 examination cited above, he reported having retired from work in the 1990s due to eligibility by age or duration of work.

The Veteran had a VA joints examination in October 2009 in which he reported having retired in 1971 due to eligibility by age or duration of work. The examiner stated the Veteran's service-connected knee disability prevented sports and caused mild impairment of chores and exercise; also, the Veteran would have trouble squatting or kneeling. 

The Veteran had a VA orthopedic examination in October 2010, performed by a physician who reviewed the claims file. Relevant to employability, the Veteran stated he had retired from his job in 1988 to build his own home and had not returned to work thereafter. The examiner noted the Veteran had normal range of motion (ROM) and muscle strength and that neurological examination was grossly intact and non-focal. The examiner noted the Veteran's subjective complaints relating to his service-connected disabilities of the cervical spine, left hand, left ankle and bilateral knees, and also examined those joints and noted clinical observations in detail. The examiner stated the Veteran's physical examination demonstrated mobility and dexterity adequate for employment in a sedentary occupation for a 40 hour workweek. The examiner cited occupational literature, the examiner's experience as a certified functional capacity evaluator and the expected outcomes of orthopedic disabilities.

The Veteran's most recent VA examination of the knees and lower extremities was performed in December 2014. The examiner stated the Veteran should work in light duty or sedentary work due to function of the lower extremities.

The evidence of record demonstrates that the Veteran has not been employed since the 1990s or longer; however, the record does not suggest that the Veteran's service-connected disabilities render him unemployable. Various medical examiners have stated that despite his service-connected disabilities the Veteran is physically able to maintain sedentary employment; such sedentary employment is consistent with his education (four years of college) and with his training and work experience (military rank of Sergeant Major). The Board recognizes that at the Veteran's age it is difficult to find work, but age is not a factor that be considered in determining eligibility for TDIU; see Van Hoose, 4 Vet. App. 361, 363. 

The ultimate question of whether a veteran is capable of substantial gainful employment is not a medical one; rather, that assessment is for the adjudicator. Moore v. Nicholson, 21 Vet. App. 211, 218 (2007), rev'd on other grounds sub. nom. Moore v. Shinseki, 555 F.3d 1369 (Fed. Cir. 2009). Nonetheless, the Board assigns high probative value to the VA examination reports cited above, which show the Veteran to be physically able to perform sedentary duties despite his service-connected disabilities. The Veteran asserts his service-connected disabilities render him unemployable, but he has made no effort to demonstrate how this is so. 

Based on the evidence and analysis above the Board finds the Veteran's service-connected disabilities do not render him unable to obtain and maintain gainful employment consistent with his education, training and work experience. Accordingly, the claim for TDIU must be denied.

In reaching the above conclusion, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable in the instant appeal. See 38 U.S.C.A. § 5107(b) (West 2014); Ortiz, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert, 1 Vet. App. 49, 55-56.


ORDER

Service connection for residuals of a cold weather injury to the left foot is denied.

Service connection for residuals of a cold weather injury to the right foot is denied.

Service connection for a low back disorder is denied.

Entitlement to a TDIU is denied.




____________________________________________
MARJORIE A. AUER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs